## EVANS *v.* SCHOONMAKER.

Practice; Contracts; Evidence.

1. Alleged errors in the rulings of a trial court cannot be reviewed on appeal unless exception was reserved to them at the trial.

2. When the whole of a contract has not been reduced to writing, such contract in its entirety is to be regarded as a parol contract, subject to all the incidents of purely parol contracts and proper to be proved entirely by parol testimony, notwithstanding there may be documentary evidence of parts of it and parts of it may have been reduced to writing.

3. A party cannot be heard to complain in an appellate court of that which he has co-operated in doing in a lower court, any more than he can properly assign as error instructions requested by himself.

4. Whether this court, in cases transferred to it from the General Term of the Supreme Court of the District of Columbia by the act of Congress of February 9, 1893, creating this court, has the power which existed in the General Term, under R. S. D. C. Sec. 805, to review the decisions of the special terms of the Supreme Court upon motions for a new trial, when the question is of the sufficiency and weight of evidence, *quaere.**

No. 104. Submitted November 17, 1893.—Decided December 21, 1893.

Hearing on an appeal by the defendant from an order of the Supreme Court of the District of Columbia, holding a law term, overruling a motion for a new trial on a bill of exceptions. *Affirmed.*

The Court in its opinion stated the case as follows:

This is a suit at common law to recover an alleged balance of account.

On August 2, 1878, Daniel W. Schoonmaker, of New York, being then the owner of a certain dredge and two scows, with various appurtenances belonging to them, which at the time lay in the harbor of New London, in the State of Connecticut, entered into a contract for the sale of the same to John O. Evans, of the city of Washington, for the sum of

---

* See Gleeson *v.* Railroad Co., 1 App. D. C., 185.

$14,350. Of this sum $7,350 were paid in cash, whether at that time or about two weeks afterwards, is not quite apparent; and the residue of the purchase money, amounting to $7,000, was subsequently disposed of as will be hereafter stated.

This contract of sale was made in the city of New York. An agent of Evans was thereupon sent to New London to take possession of the dredge and scows. But as soon as this was attempted to be done and the agent of Evans went on board the dredge and sought to take the dredge and scows out of the harbor, he was resisted by agents of the Albertson & Douglas Machine Company, a corporation of the State of Connecticut, located at New London, which claimed a lien on the dredge and scows for repairs done upon them to the amount of about $5,000; and these agents compelled the return of the vessels to their previous mooring place. Thereupon, both Evans and Schoonmaker, as well as the brother of the latter, who figured in the business partly as principal, but mainly as his brother's adviser, repaired to New London. This was about the 9th or 10th of August. During the period of a week or ten days for which their stay in New London was protracted, negotiations were carried on between Schoonmaker, Schoonmaker's brother and Evans, on the one side, and the agent of the machine company on the other, the result of which was an agreement that Evans should pay to the machine company the sum of $3,500 or $3,750—for the testimony is conflicting as to the amount—out of the $7,000 of the purchase money retained by him; and that the residue ($3,500 or $3,250) should be retained by Evans out of the purchase money to meet the final adjustment of the claim of the machine company, for which Evans was to give satisfactory bond to the company. Various papers were thereupon executed, including bills of sale of the dredge and scows by Schoonmaker and his brother to Evans; a memorandum signed by Evans declaring the purpose for which he held the amount retained by him; a memorandum of agreement between Evans

and the machine company; a bond executed by Evans to secure that company; another bond executed by Evans to secure the claim of one Townsend, who also claimed to hold a lien on the property, or on part of it, to the amount of about $700 or $800; but, strange to say, no written agreement between Schoonmaker and Evans, except in as far as the other papers mentioned constituted such an agreement or formed elements of an agreement.

Evans found some difficulty in giving the bond required by the machine company for the want of a local surety; and finally in place of it substituted a deposit of some bank stock with a trustee, which substitution was accepted by the company. Thereupon, the agents of Evans took the dredge and scows away; and the parties separated.

At the time of these negotiations there was a suit pending in one of the courts of the State of Connecticut on behalf of the Albertson & Douglas Machine Company against Schoonmaker, or against Schoonmaker and his brother, to enforce a lien claimed by the company to the amount of about $5,000 for repairs upon the dredge and scows. This lien was claimed under some provision of the laws of the State of Connecticut, which seems subsequently to have been held unconstitutional and void; and the suit of the machine company was accordingly defeated. This suit is mentioned in the record of the present case as the " lien suit."

There was also pending in the courts of the State of Connecticut another suit in the name of the machine company against Schoonmaker and his brother on an open account for the sum of twenty thousand dollars, which in this record has been designated as the " *assumpsit* suit," and which, so far as we are advised by the declaration, which was in the common counts, with a lengthy bill of particulars that does not appear in this record, had no reference whatever to the dredge and scows—although we may conjecture that it was at least in part for work done upon them. The declaration in this " *assumpsit* suit " was subsequently amended by the insertion of certain words after the name of Schoonmaker,

defendant in it, to indicate that the suit had some reference to the dredge and scows. These words were: "As the owner of a certain dredge called 'clamshell dredge,' in the city and harbor of New London, for repairs and materials and services on said dredge." At what time this amendment was made does not positively appear; but it would seem to have been three years after the delivery of the dredge and scows to Evans. Neither is it positively certain whether this suit was pending at the time of the negotiations that have been mentioned, although the first writ in it is dated as of August 1, 1878.

A judgment by default was taken in this *assumpsit* suit on March 1, 1881, for $2,316.88, and costs of suit, amounting to $33.49. On May 23, 1881, Schoonmaker moved to vacate the judgment by default, was unsuccessful in the trial court, but succeeded in the Supreme Court of the State in procuring a reversal of the judgment of the lower court, and a reinstatement of the cause in March, 1884. On March 24, 1886, the cause, by agreement of parties, was sent to a referee, and is yet pending; or, at all events, was pending on June 1, 1887, when the transcript of the record of the cause was given that has been filed in this cause. Immediately after the rendition of the judgment by default, and between that date (March 1, 1881) and the filing of Schoonmaker's motion to vacate that judgment (May 23, 1881), Evans having been notified, it seems by the attorney of the machine company, paid the amount of the judgment to that attorney, and redeemed his bank stock, apparently without the knowledge of Schoonmaker and without any consultation with him. He also paid, at the same time, a judgment that had been rendered in favor of Townsend against Schoonmaker for $846.09 and $63.14, costs of suit; but as the plaintiff has agreed in this cause, by way of settlement and compromise, to give credit for this amount, the Townsend claim practically passes out of the cause. It may be noted, however, that the credit given in the first instance was only $700, as this claim was originally stated to be; but, on the motion for

a new trial made in this cause, the plaintiff remitted the additional sum of $209.23.

The question in controversy in the present suit is, whether the payment of $2,350.37 by Evans to the Albertson & Douglas Machine Company between March 1 and May 23, 1881, was authorized by the agreement between Evans and Schoonmaker in 1878; and the determination of the question depends on the terms of that agreement, which, as we have already stated, seems not to have been formally reduced to writing.

On the part of the plaintiff, it is now claimed that this agreement was to the effect that Evans should retain the sum of $3,500 or $3,250 withheld by him, to meet the result merely of the lien suit. And as this lien suit was finally decided in favor of Schoonmaker on March 8, 1883, demand was thereupon made upon the appellant, as administratrix of the estate of Evans, Evans having died in 1881, to pay the amount so retained; and upon her refusal the present suit was instituted on July 30, 1883.

On the part of the defendant, the appellant here, it is contended that the agreement was that the sum withheld was to be retained for the satisfaction of any claims then existing of the machine company against Schoonmaker that might thereafter be enforced by legal proceedings; that it covered the *assumpsit* suit as well as the lien suit; that, therefore, the estate of Evans should have credit for the sum of $2,350.37 paid by him, as well as for the sum of $909.23 paid in satisfaction of the Townsend claim, both of which sums together slightly overbalanced the amount retained, and that inasmuch as the *assumpsit* suit was still pending undetermined, the present suit was prematurely instituted.

*Mr. Enoch Totten* for the appellant:

The principal point in controversy between the parties here is whether the sum withheld by Evans was so withheld by him to answer to *all* claims and liens, or whether it was applicable only to the asserted technical *lien* provided for

by the Connecticut statute. There can be no reasonable doubt that all these papers were made and delivered at one time, and that all the agreements and the payment of $3,750 constituted one transaction, and it is equally certain that the plaintiff sanctioned everything. His object was to secure the delivery of the property to Evans, and this could not be accomplished until the agreements were delivered and the cash payment made to the machine company. If he was not present in person at the time of such delivery and payment, he was present by his attorneys. He clearly approved of it, and the money was paid for his debts. In the case of *Nash* v. *Towne*, 5 Wall., 699, the court declared that " courts, in the construction of contracts, look to the language employed, the subject matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they were entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described." See also *Moran* v. *Prather*, 23 Wall., 501 ; *Mobile R. R. Co.* v. *Jurey*, 111 U. S., 592. In the final charge of the court the jury were told that it was a question for them to decide whether under these various agreements Evans was justified in paying to the A. & D. Co. the amount of the judgment in the *assumpsit* suit. This was plainly a repetition of the error made originally in allowing the two prayers to the plaintiff. This question was one of pure law, not one of fact. It arose on the construction of the written contracts, and should have been decided by the court. If it had been decided rightly, the verdict must have been for the defendant.

*Mr. A. S. Worthington* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This present suit, as already stated, was instituted on July 30, 1883; and the trial now before us for review is the third

trial of the issues between the parties. In the meantime the original parties to the transaction have all died; and several of the witnesses have died. The suit itself is ten years old; the transaction out of which it grew is more than fifteen years old. It is time that the controversy should be terminated, if it can be terminated consistently with right and justice. We propose, so far as we can, so to terminate it.

The case now comes before us on four assignments of error to the rulings of the court below. How these arise it is necessary to state.

The plaintiff, having adduced oral testimony tending to show that the contract entered into in 1878, between Evans and Schoonmaker, under which the money was withheld, amounting to $3,500, provided only for the outcome of what is known as the lien suit, thereupon offered in evidence the record of that suit, which showed that the suit had been dismissed, and finally disposed of. To the admission of this record in evidence, exception was reserved on behalf of the defendant. But as there is no assignment of error based upon this exception, it is presumed that it has been abandoned. And, indeed, it is not apparent how such exception could have been at all sustained.

Then the defendant adduced testimony, both oral and documentary, the latter consisting mainly of the papers already stated to have been executed at New London between the 10th and 20th of August, 1878, by which it was sought to be shown that the agreement between Evans and Schoonmaker covered not only such claims of the machine company against Schoonmaker as might be enforced by lien, but all existing claims of every kind, and therefore the *assumpsit* suit as well as the lien suit. And thereupon the record of the *assumpsit* suit was offered in evidence, which showed that that suit was yet pending.

Both parties requested instructions to the jury, and two were given on behalf of each. Those given on behalf of plaintiff were as follows:

" 1. If the jury find from the evidence that the sum re-

tained by Evans from the purchase money of the dredge and its appurtenances was $3,500, and that said sum was only retained for the purpose of protecting Evans against liens upon the dredge and its appurtenances, then (counsel for the plaintiff having agreed that the defendant shall have credit for the amount of the Townsend bond) the jury will render a verdict for the plaintiff for the sum of $2,800, with interest from the 3d day of March, 1883."

" 2. If the jury find from the evidence that the sum retained by Evans from the purchase money of the dredge and its appurtenances was $3,250, and that said sum was retained only for the purpose of protecting Evans against liens upon the dredge and its appurtenances (counsel for the plaintiff having agreed that the defendant shall have credit for the amount of the Townsend bond) the jury will render a verdict for the plaintiff for the sum of $2,550."

These two instructions, it will be noted, are identical, except in the matter of amount. The first requests the jury to find that the amount retained by Evans was $3,500, which, after deducting $700 for the Evans bond, would leave $2,800 as the amount due. The second instruction assumed $3,250 to be the amount retained, and consequently $2,550 as the amount due.

The two instructions granted on behalf of the defendant, and which were not excepted to by the plaintiff, were in substance to the effect that, if the jury should find that the money retained by Evans was retained to meet the result of the *assumpsit* suit, or to meet any claims or demands of the machine company then existing against Schoonmaker, then the verdict should be for the defendant. The court thereupon of its own motion proceeded to charge the jury at length in explanation of the antagonistic claims of the parties. To this charge no exception was taken, so far as the record shows; but exception was duly reserved to the granting of the two instructions given on behalf of the plaintiff.

The jury returned a verdict in favor of the plaintiff for the sum of $2,550, with interest from March 3, 1883. There-

upon the defendant moved for a new trial on the ground that the verdict was against the weight of the evidence. This motion the court overruled on condition that the plaintiff would remit $209.35 additional on account of the Townsend claim, the proof being that Evans had paid on that account $909.35, and not merely $700, which was supposed to be the amount of it. The plaintiff acceded to the condition, the motion for a new trial was overruled, judgment was entered for the plaintiff for the sum of $2,240.65, with interest from March 3, 1883; and from this judgment the defendant prosecuted the present appeal to the General Term of the Supreme Court of the District of Columbia, from which tribunal it has been transferred to this court.

As already stated, there are four assignments of error on behalf of the appellant. These are: 1. That it was error to grant the two instructions requested on behalf of the appellee, as this remitted to the jury the construction of a series of written contracts; 2. That it was error to grant these instructions in any event; 3. That the court erred in its charge to the jury; 4. That the court erred in overruling the appellant's motion for a new trial.

Of these the third may be eliminated at once from the case. There was no exception taken to the charge of the court or to any part of it; and, of course, it is an elementary rule of practice that alleged errors in the rulings of a trial court cannot be reviewed on appeal unless exception was reserved to them at the trial.

The second assignment is not different from the first, and the appellant practically regards the first and fourth assignments of error as the only assignments in the cause, and these alone need be considered.

1. The appellant's first position is, that the principal point in controversy between the parties was whether the sum retained by Evans was retained to answer all pending claims and demands of the machine company against Schoonmaker, or only one specific lien; that this question arose upon and was to be determined by certain written contracts;

that the question was one of law to be decided by the court, and not one of fact to be determined by the jury; and that the effect of the instructions complained of was to remit this question to the jury. This position is not justified by the record. A series of papers was introduced on behalf of the defendant at this trial which were justly subject to some degree of suspicion, inasmuch as they had not been introduced at the first trial. No one of these purported to be a contract between Evans and Schoonmaker on the subject matter of this suit. All of them taken together did not constitute such a contract. At the utmost, they were merely links in a chain which had to be connected by extraneous oral testimony. They were not the contract in question, but elements of proof of that contract, which still remained in parol. It is a well established rule of law that, when the whole of a contract has not been reduced to writing, such a contract in its entirety is to be regarded as a parol contract, subject to all the incidents of purely parol contracts, and proper to be proved entirely by parol testimony, notwithstanding that there may be documentary evidence of parts of it, and parts of it even may have been reduced to writing. Greenleaf on Evidence, Sec. 284a; *Jervis* v. *Berridge*, L. R., 8 Chan., 351 ; *Wright* v. *Weeks*, 25 N. Y., 153.

In the present case, no instruction was asked of the court as to the construction and effect of these documents. The plaintiff was under no obligation to ask instructions; the documents were no part of her case. It is presumed that the documents were intelligible to the jury, and that they required no construction by the court as to their meaning and effect. If they constituted in themselves a complete contract, as the appellant now seems to imply, and tended to show the truth of the appellant's contention, it was incumbent on the appellant, and not upon the appellee, to ask for such instructions to the jury as might be proper to give the papers their due effect. Instead of so doing, the appellant, on the contrary, by her own prayers for instructions, requested that the jury should pass upon the facts. A party

cannot be heard to complain in an appellate court of that which he has co-operated in doing in a lower court, any more than he can properly assign as error instructions requested by himself. *Randon* v. *Toby*, 11 How., 493; *N. Y. Elevated Railroad Company* v. *Fifth National Bank*, 135 U. S., 432.

Of the two instructions mentioned and here complained of, the first may be here dismissed entirely from consideration, for the reason that, as already stated, the two are identical except as to amount; and the jury having found the amount as in the second instruction, the appellee has accepted the finding. This second instruction is nothing more than a prayer that if Evans retained $3,250 to secure him against the lien suit, and for no other purpose, that suit being now disposed of, the jury should find that he was indebted to the plaintiff in that amount. It is difficult to see why this was not a proper instruction.

But the appellant's main reliance seems to be on the fourth assignment of error, the refusal of the court to grant a new trial on the theory that the weight of evidence was with the defendant. In the numerous causes that have come to us by transfer from the General Term of the Supreme Court of the District of Columbia, the question has frequently arisen whether the power has been conferred upon this court, which existed in that tribunal under Sec. 805 of the Revised Statutes of the United States for the District of Columbia, as construed by the Supreme Court of the United States in the case of *Metropolitan Railroad Company* v. *Moore*, 121 U. S., 558, to review the decisions of the special term upon motions for a new trial, when the question is of the sufficiency and weight of evidence. We prefer to leave that question undetermined. In a brief time by the disposition of the causes, to which we have referred, the question must cease to be one of practical importance. In the present case we do not find it necessary to decide it; for we are of opinion that, if we have the right to such a review, the cause is not one which calls for its exercise so far as to dis-

turb the judgment that has been rendered. The testimony is amply sufficient to warrant the verdict rendered by the jury. Indeed, the documentary evidence on which the appellant appears to place so much reliance would seem to support the plaintiff's theory, rather than that of the defendant. One of the papers, the memorandum signed by Evans, witnessed by Lippett, and apparently purloined from the possession of the latter, mentions merely " lien upon said property," and " suits on account of mortgage," evidently meaning a mortgage or lien upon the property. And the agreement between the machine company and Evans, and the bond given by the latter to the former, specify " liens and claims amounting to $6,100 against a certain clam-shell dredge, two scows," etc., and " a claim for $6,100 for repairs, labor, material, etc., upon a vessel and property, viz., a clam-shell dredge," etc., for which the company has " a lien under title No. 18, Chap. 1, of the statutes of Connecticut upon said property." The purport of all these papers is to secure satisfaction for a lien claimed; and there is no reference anywhere to any case of individual liability or personal obligation on the part of Schoonmaker. Upon these papers alone we would regard the preponderance of evidence to be greatly in favor of the plaintiff below; and there is nothing in the oral testimony to induce a very different conclusion.

We are, therefore, of opinion that there was no error in the ruling of the court below, either in the instructions which it gave to the jury, or in its refusal to grant a new trial, *and we must affirm the judgment with costs.*