Mark K. HARRISON, Appellant,

v.

UNITED STATES, Appellee.

No. 12933.

District of Columbia Court of Appeals.

Argued Oct. 5, 1978.

Decided Oct. 26, 1979.

Peter B. Krauser, Washington, D. C., for appellant.

William J. Birney, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the case was briefed, John A. Terry and David W. Stanley, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KELLY, KERN and MACK, Associate Judges.

MACK, Associate Judge:

Appellant challenges his conviction, following a jury trial, for robbery in violation of D.C.Code 1973, § 22–2901. He argues *inter alia* that (1) the admission at trial of complainant's extra-judicial statements was contrary to the rules of evidence and the Confrontation Clause of the Sixth Amendment, and (2) the evidence at trial was not sufficient to support a verdict of guilty beyond a reasonable doubt.[1] We reverse.

The government's evidence at trial revealed the following: On the evening of November 22, 1976, outside the Continental Trailways bus terminal, appellant and a companion approached complainant, an elderly man who had just arrived from Philadelphia. Appellant asked complainant, who was retrieving his luggage, whether he required assistance. Complainant replied that he did not, and walked toward the terminal building. Appellant's companion then dropped several coins in front of complainant, who bent down to get them. At that moment, appellant reached inside complainant's overcoat and removed a brown envelope from the left-hand pocket. Appellant and his companion then separated, each leaving the terminal area.

The above sequence of events was seen by Robert Lee Powell, a baggage supervisor at the bus terminal, who testified for the government at appellant's trial. Mr. Powell stated that he had observed appellant at the terminal on a daily basis for eight years prior to the alleged robbery. He then repeated the description he gave to the police of appellant on the evening complainant's money was taken. Moreover, Mr. Powell identified a brown jacket which the witness said appellant was wearing at the time of the alleged robbery and which the police seized from appellant upon his arrest.[2]

Three police officers also appeared as government witnesses. One, Kenneth Valldejuli, testified that he interviewed complainant at the bus terminal some fifteen minutes after the alleged robbery. Officer Valldejuli stated that complainant appeared "confused, disoriented" and "didn't realize that he had got pickpocketed." Over the objection of defense counsel the officer also stated that complainant declared he had

---

1. Appellant's remaining contention that he received ineffective assistance of counsel at trial is without merit on this record. *See Angarano v. United States*, D.C.App., 312 A.2d 295 (1973); *Bruce v. United States*, 126 U.S.App. D.C. 336, 379 F.2d 113 (1967). *Also see Woody v. United States*, D.C.App., 369 A.2d 592, 594 (1977) citing *United States v. Hammonds*, 138 U.S.App.D.C. 166, 425 F.2d 597 (1970).

2. Although the government in its opening statement noted that this witness was unable to identify appellant's photograph from several shown him by police on November 23, 1976, the day following the alleged robbery, Mr. Powell claimed to have previously recognized appellant's photograph twice—on November 23rd and again on December 4th. Finally, Mr. Powell testified that, in January of 1977, he identified appellant in a police lineup.

*lost* a "[b]rown manila envelope containing six thousand dollars in cash."

A second police officer, Detective Casimir Wyzgowski, testified to Robert Powell's identification of appellant from an array of ten photographs on December 4, 1976, and in the lineup of January 13, 1977.

The third police officer, Harry Hanbury, was an expert on pickpocketing techniques. Over defense counsel's objection, he testified that pickpockets often work in pairs, with one distracting the victim while the other takes the victim's property. Officer Hanbury also testified that pickpockets' likely targets, among others, would be "an old person" or "somebody . . . distracted by carrying luggage."

Complainant did not appear at appellant's trial. Detective Wyzgowski testified that, according to complainant's daughter, her father was with her in Louisiana, unable to come to Washington because of a nervous condition.[3]

In his defense at trial, appellant called as a witness his mother, who testified that at the time of the alleged robbery, the appellant was home, caring for her and doing household chores while she was recuperating from a heart attack. She also testified that on that same day, appellant's brown jacket was at the cleaners.

## I.

■ Appellant argues that the introduction into evidence of complainant's out-of-court statement that he had lost a "[b]rown manila envelope containing six thousand dollars in cash" was (a) inadmissible hear-

say, and (b) violative of appellant's constitutional right of confrontation.[4]

A. A well-recognized exception to the rule against admitting out-of-court statements for their truth permits the introduction of a declarant's spontaneous utterance. C. McCormick, Evidence § 297 (2d ed. E. Cleary 1972).

Elements necessary to justify [this] exception to the hearsay rule include (1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it, and (3) the presence of circumstances, which in their totality suggest spontaneity and sincerity of the remark. [*Nicholson v. United States*, D.C.App., 368 A.2d 561, 564 (1977) (citation omitted).]

■ The trial court was correct in ruling initially that under *Nicholson*, complainant's remark to Officer Valldejuli qualified as a spontaneous utterance. *First*, the loss of six-thousand dollars could be expected to induce a state of nervous excitement or shock: this was manifest in Officer Valldejuli's testimony that complainant appeared "confused," "disoriented," and "extremely" upset at the time. *Second*, complainant made his remark within a reasonably short period after the alleged robbery—just 15 minutes,[5]—negating the idea that he might have calmly concocted a story as to the loss of his savings. *Finally*, the totality of the circumstances under which complainant

---

**3.** At the end of the government's case, defense counsel renewed an earlier motion for mistrial on the grounds that, in view of the absence of complainant, the evidence was insufficient to show that anything of value was taken from him. Counsel also asked that the court reconsider evidence as to the spontaneous utterance. The motion was denied.

**4.** Appellant also argues for the inadmissibility of Officer Valldejuli's testimony, that complainant "didn't realize that he had got pickpocketed." That testimony was given in response to

defense counsel's question on cross-examination—and so may not review it. "A party cannot be heard to complain in an appellate court of that which he has cooperated in doing in a lower court." *Evans v. Schoonmaker*, 2 App.D.C. 62, 71–72 (1893) . . . .. (Citations omitted.)

**5.** Indeed, in *Nicholson v. United States, supra*, the time between the crime and the declarant's utterance was close to 30 minutes—and still we found that to be reasonably short.

made his remark speaks to its spontaneity [6] and sincerity. He was unaware that he had been the victim of a crime. Rather he thought his loss was accidental. The remark was the immediate expression of his distress, made without bias or motive to lie.

B. Appellant, however, would have us hold that complainant's absence at trial in the instant case was a constitutional bar to the admission of his out-of-court statement, despite its status as a spontaneous utterance. *See California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 26 L.Ed.2d 838 (1970); *Pointer v. Texas*, 380 U.S. 400, 407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). We are acutely aware that to every defendant in a criminal case attaches the right " 'to be confronted with the witnesses against him.' " U.S. Const., amend. VI, *quoted in Sullivan v. United States*, D.C.App., 404 A.2d 153, 159 (1979). However, it cannot be argued "that the constitutional right to confrontation requires that no hearsay evidence . . . ever be introduced." *Dutton v. Evans*, 400 U.S. 74, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970). It is settled, for example, that a dying declaration may be constitutionally admitted in a criminal case, despite the obvious unavailability of the decedent for cross-examination. *See Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895). In general, however, the degree of interphase between exceptions to the evidentiary rule against hearsay and the constitutional requirement of confrontation is unclear.[7] As the Eighth Circuit has noted, "[T]he Supreme Court has declined thus far to define the exact circumstances within which hearsay admitted for a limited purpose . . . may nonethe-

less offend a defendant's Sixth Amendment rights to such an extent that his conviction must be set aside." *United States v. Rogers*, 549 F.2d 490, 498–99 (8th Cir. 1976) (footnote and citations omitted). Thus, the Court, while acknowledging that the Confrontation Clause and the evidentiary hearsay rule stem from the same roots, has declined to equate the two. *Dutton v. Evans, supra*, 400 U.S. at 86, 91 S.Ct. 210.

The Supreme Court, however, in *Dutton* did discuss the factual circumstances that gave an indicia of the reliability factors "widely viewed as determinative" in admitting hearsay under the Sixth Amendment, despite the absence of the declarant for cross-examination. *See Dutton v. Evans, supra* at 88–89, 91 S.Ct. 210. The determinative factors are that: (1) the declarant's knowledge for making the out-of-court statement was well-established; (2) declarant's recollection of the crime was good; (3) declarant had no motive to misrepresent himself; and (4) the out-of-court statement contained no express assertion of past fact and so carried on its face a warning to the jury against giving it undue weight. *Dutton* also indicates that the out-of-court statement must be of "peripheral significance"—neither "crucial" to the proponent's case nor "devastating" to the defense—and that there must be no suggestion of prosecutorial misconduct or negligence. Moreover, it must be clear that the cross-examination of the declarant would not have significantly aided the jury in testing the statement's reliability. *Id.* at 87, 91 S.Ct. 210.

The government correctly points out that when a hearsay statement is intro-

---

6. That complainant's remark was made in response to an inquiry by police does not demonstrate its lack of spontaneity. *Young v. United States*, D.C.App., 391 A.2d 248 (1978); *Nicholson v. United States, supra; United States v. Glenn*, 154 U.S.App.D.C. 61, 64, 473 F.2d 191, 194 (1972).

7. The Supreme Court appears to be operating between two polar views in measuring the degree of this interphase on a case-by-case basis. One of these views, exposed by the late Justice Harlan and Dean Wigmore, treats the Confrontation Clause as placing no limits on the admis-

sibility of evidence in criminal cases. *See Dutton v. Evans, supra*, 400 U.S. at 94, 91 S.Ct. 210 (Harlan, J., concurring); 5 J. Wigmore, Evidence § 1397 (Chadbourn rev. 1972). The Harlan-Wigmore position, essentially, is that the clause constitutionalizes the hearsay rule and its exceptions. The other view is that in all cases the defense has a right under due process of law "to cross-examine the prosecutor's *living* witnesses." *Pointer v. Texas, supra*, 380 U.S. at 410, 85 S.Ct. at 1071 (Stewart, J., concurring) (footnotes omitted; emphasis added).

duced in a criminal case, its admission must be reconciled with the provisions of the Confrontation Clause, and that this requires a case-by-case analysis under *Dutton* standards. Measured by such standards, we have concern about the right of confrontation in this case. At the outset we note on the positive side that complainant made his statement about losing a brown envelope containing $6000 from personal knowledge, and that there was little chance of faulty recollection or motive to misrepresent behind his statement, since he made it spontaneously, without time to forget and fabricate. The statement was not devastating to appellant's defense that he was not in fact on the scene. Moreover, there was no suggestion of prosecutorial misconduct or of wholesale denial of cross-examination. *See Dutton, supra* at 87, 91 S.Ct. 210. Officer Valldejuli, who reported complainant's statement, could have been confronted with questions as to whether the envelope or the $6000 was ever found on appellant's person, in his home, or at the bus station. The officer could have been asked whether the complainant's advanced age, and his confused and disoriented condition in a busy bus station might have hindered his accurate judgment as to where and when his loss occurred. Thus, even in the physical absence of complainant at trial, there was some opportunity at least to question his credibility. *See Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

 Turning to the fourth *Dutton* standard, the statement was an assertion of a past fact, a loss of personal property. Under the circumstances here, we might easily equate the statement as being tanta-mount to an assertion of a contemporaneous fact. However we cannot so easily dispose of what we think to be the determinative factor here—the out-of-court statement was crucial to the government's case.[8] The indictment charged that appellant took from the complainant property of value consisting of a "brown envelope containing money." While there was eyewitness testimony that appellant took the brown envelope from complainant, it was only through the out-of-court statement that its content of money was established.[9]

We have grave difficulty, at least under circumstances where a declarant is living, in permitting a hearsay statement to be used to supply an essential element of the government's case. *Cf. Dutton, supra*. We therefore agree with the appellant that the admission of the out-of-court statement, under the circumstances of this case, has deprived him of the opportunity to confront a witness against him in violation of the Sixth Amendment. We find only that to this extent, at least, the interests of the Confrontation Clause and the evidentiary hearsay rule are co-extensive.

*Reversed.*

---

8. We do not agree with the government that the evidence in this case would have been sufficient to sustain the conviction in the absence of the out-of-court statement. The case of *Riley v. United States*, D.C.App., 291 A.2d 190 (1972) relied upon by the trial court is distinguishable. We found in that case that circumstantial evidence supplied by the testimony of officers witnessing a pickpocket operation was sufficient to show ownership and possession of, and lack of consent to take, a wallet belonging to a victim absent from a second trial for petty larceny and assault. The distinction between the cases is simply that the circumstantial evidence here was insufficient to show that the something of value, alleged, was taken.

9. Even if we assumed that a brown envelope per se was property of value to sustain a conviction of robbery, the variance between the proof and the charge would prove fatal in this case. *See, e. g.,* the reasoning of *Whalen v. United States*, D.C.App., 379 A.2d 1152 (1977).