**Ronnie E. MATTHEWS, Appellant,**

**v.**

**UNITED STATES of America,
Appellee.**

**Luther P. MITCHELL, Appellant,**

**v.**

**UNITED STATES of America,
Appellee.**

**Nos. 21798, 21799.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 28, 1968.

Remanded June 23, 1969.

Decided March 4, 1971.

Rehearing Denied in No. 21799
June 11, 1971.

Mr. Arthur B. Goodkind, Washington, D. C. (appointed by this court) for appellants.

Mr. David T. Austern, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, and Harold H. Titus, Jr., Asst. U. S. Atty., were on the brief, for appellee. Mr. Charles H. Roistacher, Asst. U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

FAHY, Senior Circuit Judge:

Appellants were jointly tried on an indictment for robbery, assault with a dangerous weapon, unauthorized use of a vehicle, and kidnapping.[1] The cases arose out of a robbery of a restaurant on Georgia Avenue in the District of Columbia. Upon verdicts of guilty on all counts, appellant Matthews was sentenced to imprisonment for five to fifteen years for the robbery, three to nine years for the assault, one to three years for the unauthorized use of a vehicle, and five to fifteen years for the kidnapping, the sentences to run concurrently; appellant Mitchell received the same sentences except that he was sentenced to ten to thirty years on the kidnapping count, to be consecutive to his sentences for the other offenses. His sentences accordingly total fifteen to forty-five years, while those of Matthews are five to fifteen years. Except for the kidnapping conviction of Mitchell under 18 U.S.C. § 1201 (1964), we affirm as to both appellants.

I

When the appeals were first submitted we withheld decision pending a remand to the District Court for a hearing to determine whether, under Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), the in-court identifications of appellants at trial were "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to violate due process of law. The hearing was held before the trial judge, followed by his Memorandum carefully reviewing the testimony at both trial and remand hearing, and containing his findings and conclusions. Although photographs had been used in the identification process, see Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), careful consideration was given by the trial judge to

---

1. 22 D.C.Code §§ 2901, 502, 2204 (1967), and 18 U.S.C. § 1201 (1964), respectively.

this phase of the identifications. The court stated in part:

> The record in this case discloses no significant danger of misidentification. Each of the Government's witnesses had an unimpeded opportunity to observe the defendants during daylight hours for extended periods of time. Neither defendant wore a mask or a disguise of any kind. Testimony about the circumstances surrounding the showing of the photographs produced no hint of any coercion or suggestion by police officers with respect to any witness. The identification testimony of each witness was firm and unequivocal and withstood cross-examination.

> \*   \*   \*   \*   \*   \*

> Finally, the circumstances surrounding the offense demonstrate that each of the witnesses who identified Matthews and Mitchell had seen them under circumstances affording an independent basis for their subsequent in-court identifications. Clemons v. United States, [133 U.S.App.D.C. 27, 38, 408 F.2d 1230,] 1241 [(1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969)].

The findings and conclusions of the court are adequately supported by the record. We approve them.

## II

Matthews raises a troublesome question whether at trial he was afforded effective assistance of counsel.[2] He argues, first, that his counsel practically abandoned any cross-examination of adverse witnesses. Appellants were tried together, however, for crimes committed jointly. In all significant respects cross-examination of Government witnesses could be conducted by counsel for either defendant; and counsel for Matthews' co-defendant did conduct cross-examination in a manner which inured substantially to the benefit of Matthews. This we think afforded effective assistance of counsel insofar as it depended upon cross-examination, at least to a degree sufficient to avoid constitutional error with respect to Matthews.

A difficult question is also presented by the altogether casual summation of Matthews' counsel to the jury, as indicated in part below.[3] We cannot approve such a presentation as fulfilling counsel's obligation. Under our law a criminal trial is an adversary proceeding. In cases involving an indigent defendant such as Matthews the court appoints counsel to represent the accused as an advocate and he is paid by the Government. Ordinarily counsel ably fulfill

---

2. Matthews is represented by different counsel on his appeal.

3. His statements to the jury as here set forth pose the problem:

> Counsel for the defense—I happen to be Counsel for the defendant Ronnie Matthews—also has his job. I hesitate to say, but I believe I have done it to best of my ability with what I have had to work with, so I will make these few remarks and I will sit down.

> Yes, it's true that the sole question in this case is, to put it colloquially, who done it, or who did it. I wasn't there. Counsel for the Government wasn't there. The only ones who claim to have been there were those who testified. I really can't stand before you and cast aspersions on persons sworn to tell the truth and placed their hands on the Holy Bible. I will leave it for you to decide. It is not for me to decide who is telling the truth.

> The missing cousin is an interesting aside in this case. I don't know anything about the cousin. All I know is what I heard from the witness stand. And if he isn't here, perhaps you might very well draw whatever inferences you might see fit to draw from the fact that he isn't here to testify on behalf of his cousin. I really don't know.

> But I will tell you, ladies and gentlemen of the jury, all I ask you to do in this case, without rehashing any of the grisley [sic] and gory details of it, is to fairly and properly discharge your duty, perform your job and arrive at a proper verdict in this case based on only the evidence that you heard in this trial, including the one piece of documentary evidence, and return a fair verdict as far as the defendant Ronnie Matthews is concerned.

their obligation, with invaluable assistance to the courts. No doubt due to the difficulties he encountered appointed trial counsel for Matthews misconceived his function as an advocate in this case. This we think was constitutional error. Nevertheless, we do not because of it reverse the convictions of Matthews.[4] The identification of appellants as the offenders was convincing; and there is no question but that the offenses charged to them occurred—except the kidnapping charge against Mitchell subsequently to be considered. When Matthews came into the restaurant at the time of the robbery,[5] Mitchell introduced him to the manager. The manager testified that Matthews thereupon produced a gun and ordered him to open the safe. After the robbers obtained the money the manager was ordered to accompany them to his car in the parking lot. He was required to drive them a long distance, with Matthews sitting beside him. The manager thus had ample opportunity to observe appellants. In addition, other evidence strongly supported the manager's identification of Matthews. An officer in Maryland spotted the car as the result of a look-out, followed it, and shortly after the car was abandoned arrested Matthews, whom he identified as the driver. Under the principles laid down by the Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and considering the argument of counsel for Matthews in the context of the evidence as a whole rather than in its bald abstract form, while the error was constitutional, we find beyond a reasonable doubt that it was harmless.

## III

Mitchell contends that his conviction of kidnapping under 18 U.S.C. § 1201 (1964) should be reversed on the ground the evidence was insufficient to sustain the verdict of the jury. We agree.

The federal kidnapping statute provides in pertinent part:

§ 1201. Transportation

(a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.[6]

The question is whether the jury could properly convict Mitchell of knowingly having transported the manager into Maryland notwithstanding Mitchell left the car in the District of Columbia. The Government's theory is that the conviction is sustainable because Mitchell aided and abetted Matthews in the latter's transportation of the manager into Maryland. While one who aids and abets another in the commission of a crime is responsible as a principal, 22 D.C.Code § 105 (1967), we do not think there was sufficient evidence to sustain the conviction of Mitchell of the federal crime defined in 18 U.S.C. § 1201.

■■ The manager of the restaurant, as we have said, was forcibly taken by the robbers in his own car from the scene of the robbery and required to drive it some distance. He was then told to stop,

---

4. For a like reason we do not accept appellant Mitchell's contention that the ineffective assistance rendered by counsel for Matthews carried over to his prejudice.

5. This was his second visit; the day before both appellants had breakfast at the restaurant. The waitress who served them on both occasions positively identified them at trial as the men she had seen.

6. The death sentence provision has been held unconstitutional in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

and did so, whereupon Mitchell left the car with the stolen money, saying to Matthews: "I'll see you back at the apartment. Take this man and get rid of him. * * *" As required by Matthews the manager then drove out Georgia Avenue, crossed the Maryland state line, went through Silver Spring, Maryland, and beyond, and left the car upon being ordered to do so.

Under the directions given by Mitchell, Matthews could "get rid of him" around the corner or in the next block. There was no suggestion by Mitchell that Matthews was supposed to drive into Maryland for the purpose of disposing of the manager. True, it was possible that Matthews would "get rid of him" in Maryland. But for Mitchell to offend Section 1201 there must be evidence attributing to him a knowing transportation of the manager by Matthews in interstate commerce, not the mere possibility that such transportation would ensue.[7] The evidence does not enable us to accept the view of our dissenting brother that "[t]he jury could rightly infer Mitchell subjectively contemplated that the victim would not be released by Matthews within the limits of urban Washington." Due to the lack of evidence that Mitchell associated himself with the venture involving Section 1201—the knowing transportation in interstate commerce—by participating in it as something he wished to bring about or sought by his action to make succeed, see United States v. Peoni, 100 F.2d 401, 402 (1938), his conviction for the kidnapping as an aider and abettor we think must be reversed.[8]

■ Moreover, the instruction to the jury on this phase of the case, set forth in the margin,[9] did not require the jury, in order to hold Mitchell under the federal statute, to find that he associated himself with a knowing transportation of the manager into Maryland. Assuming the instruction in the abstract to be a correct statement of the law,[10] we find no evidence of intent by Mitchell to associate himself with the federal

---

7. Matthews does not contest his kidnapping conviction on the appeal. Indeed, Section 1201 is not limited to kidnappings for pecuniary gain, see United States v. Healy, 376 U.S. 75, 81–82, 84 S.Ct. 553, 11 L.Ed. 2d 527 (1964); and there was sufficient evidence otherwise to sustain Matthews' conviction under the federal kidnapping statute.

8. That Mitchell could have been convicted of kidnapping under the local offense defined in 22 D.C.Code § 2101 (1967) is irrelevant to consideration of the present issue. The Government must prove the elements of the crime for which a defendant is charged.

9. The pertinent part of the instruction was as follows:

   Now, a person aids or abets another in the commission of a crime if he knowingly associates himself in some way with a criminal venture with the intent to commit the crime, if he participates in it as something he wishes to bring about and seeks by some action of his own to make the venture succeed. Now, some conduct by a defendant of an affirmative character in furtherance of a common criminal design or purpose is necessary, and mere physical presence by a defendant at the time and place

of the commission of a crime is not in and of itself sufficient to establish his guilt. But it is not necessary that any specific time or mode of committing the offense shall have been advised or commanded * * * nor is it necessary that in fact there shall have been any direct communication between the actual perpetrator and a defendant.

10. As Judge Leventhal states, the instruction was couched in the language of Judge Learned Hand in United States v. Peoni, 100 F.2d 401, 402 (1938), which was approved by the Supreme Court in Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949). But as Judge Hand was careful more fully to state:

   It will be observed that all these definitions [of an accessory] have nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct; and that they all demand that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words used—even the most colorless, "abet"—carry an implication of purposive attitude towards it.

crime, or that he wished "to bring about" conduct of that character by Matthews. The statement "get rid of him" is insufficient to bear the burden ascribed to it by the verdict, for it does not encompass elements essential to make out the crime.[11]

■ The basis for our reversal of Mitchell's conviction for violating the federal kidnapping statute as an aider and abettor was raised adequately at trial by defense counsel. When the Government rested its case, Mitchell's counsel moved for a judgment of acquittal on the kidnapping count, arguing, in part, that when Mitchell left the car "there is no question it was in the District of Columbia." The motion, however, was denied on the basis of aiding and abetting, which we have discussed.

Affirmed, except as to the conviction of Mitchell for violation of 18 U.S.C. § 1201, which is reversed.

LEVENTHAL, Circuit Judge (dissenting in part):

I respectfully dissent from the reversal of Mitchell's conviction under 18 U. S.C. § 1201.

When Mitchell's counsel complained there was no evidence that Mitchell knew the kidnapping would cross the state line, the trial judge said this would be taken care of in the charge on aiding and abetting.

His charge instructed the jury on the elements of the substantive offenses of robbery; assault with a dangerous weapon; unauthorized use of a motor vehicle; and violation of 18 U.S.C. § 1201 ("the Government must prove beyond a reasonable doubt that he [the defendant] knowingly transported in interstate commerce a person who had been unlawfully seized * * *").

He then turned to the instruction on aiding and abetting, which he told the jury applies to each of the four counts and offenses. This charge instructed the jury that a defendant is guilty of these crimes and is punishable as a principal, if he "advises, incites or connives at an offense" or "aids or abets the principal offender" even though he did not personally commit each of the acts constituting the offense and was not even personally present. He continued, "[A] person aids or abets another in the commission of a crime if he knowingly associates himself in some way with a criminal venture with the intent to commit the crime, if he participates in it as something he wishes to bring about and seeks by some action of his own to make the venture succeed."

Defense counsel did not object to any part of the charge. The charge on aiding and abetting is in the language of Judge L. Hand in United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938), quoted with approval in Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766 (1949).

The sufficiency of the evidence on the charge that Mitchell aided and abetted the violation of 18 U.S.C. § 1201 is established by the testimony of the prosecution witnesses indicating that it was Mitchell who masterminded the crime and instructed Matthews to get rid of the victim. Mitchell got out of the auto after they had been proceeding eastward on Gallatin Avenue, when they came to the intersection of New Hampshire Avenue. No point in the District of Columbia is far from the Maryland line; this point was a couple of miles away.

---

11. The instruction given, *see* note 9 *supra,* was too generalized adequately to inform the jury in the special circumstances of this case. There was need for explanation of how it might apply to the elements essential to guilt of Mitchell for what Matthews did, that is, the necessity of finding that Mitchell knowingly associated himself in the transportation of the manager in interstate commerce. Without

such an explanation we think the jury cannot be said to have inferred beyond a reasonable doubt conduct of Mitchell requisite to his conviction of the federal crime, committed after he had withdrawn and when what he had already done cannot be held to have been within a "purposive attitude" on his part to aid in this other very serious crime possibly carrying a sentence of life imprisonment.

The jury could rightly infer Mitchell subjectively contemplated that the victim would not be released by Matthews within the limits of urban Washington, situated as it is with ready access to telephones and hence the police, but in a more rural or at least suburban area, which, as the jurors would know, meant Maryland.

I think the jury verdict was also justified by an inference that Mitchell was a knowing participant not only in the beginning of the kidnapping, but in the intent that the victim be turned loose wherever Matthews thought suitable for purposes of their concerted action, which I think comprehends knowing participation in a release across the nearby state line if Matthews thought this best. A different problem would be presented if Mitchell testified or otherwise contended that Matthews somehow departed from the venture as understood by Mitchell. Nothing of that kind is in the case. Mitchell is contending that although he was knowingly involved in violation of the law prohibiting kidnapping within the District, D.C.Code § 22–2101, exposing him to the same sentence, the prosecutor did not prove he subjectively "knew" there would be a crossing of the nearby border.[1] Under the circumstances I feel no sense of injustice as to either the charge or verdict.

Defense counsel would have been entitled to ask the judge to amplify his general charge by explaining that the fact that Mitchell had knowingly associated in the kidnapping venture did not necessarily establish that he had knowingly associated in a venture to transport the victim across the state line. But the charge was both standard in the jurisdiction and accurate, and the failure to pro-

vide an amplification that was not requested does not condemn it.

If such a refinement had been requested by defense counsel the prosecutor would have been entitled to an amplification that defendant would be guilty of violation of 18 U.S.C. § 1201 even though he did not subjectively contemplate the prospect that interstate lines would be crossed, if either of two conditions were found by the jury beyond a reasonable doubt—

(a) that the two men were acting in concert, which is a conspiracy, and that the substantive offense (of kidnapping and knowing crossing of state lines) "was committed in furtherance of the conspiracy and as a part of it,"[2] or

(b) that Mitchell was responsible for aiding and abetting Matthews in the offense (of kidnapping plus knowing crossing of state lines) because there was a "community of unlawful intent" and the act is one "which in the ordinary course of things was the natural or probable consequence of the crime [of kidnapping] that he advised or commanded, although such consequence [of crossing state lines] may not have been intended by him."[3]

In view of this learning, Mitchell obviously was not entitled to a directed verdict at the time he sought one. The problem now raised by Mitchell could plainly have been obviated by refinement of the instruction. A question arises as to whether he did not have to renew the motion for directed verdict after the giving of the instructions, on the ground— now accepted by the majority—that there was not sufficient evidence to show that the defendant knowingly associated himself with the criminal venture with the intent to commit the crime. I do not

1. Appellant Mitchell contends he did not possess "any attitude at all, positive or negative" toward the element of knowing interstate transportation of the kidnap victim.

2. Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766 (1949).

3. McClanahan v. United States, 230 F.2d 919, 924 (5th Cir. 1956), cert. denied 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47 (1956) ; Russell v. United States, 222 F.2d 197, 199 (5th Cir. 1955).

reach that issue because in my view the evidence was sufficient.

I would, however, have accompanied an affirmance of the conviction with a notation that I was disturbed by the cumulative sentences, in which Mitchell's sentence for robbery, 5 to 15 years, was heightened by an additional sentence for kidnapping of 10 to 30 years, when the transportation of the victim was done in a completion of the robbery—with no violence or ransom. But on this I would have remanded to the district judge for further consideration of the sentence.

I respectfully dissent from the reversal.

### On Petition for Rehearing

Opinion filed by FAHY, Senior Circuit Judge.

Concurring opinion filed by LEVENTHAL, Circuit Judge.

FAHY, Senior Circuit Judge: The petition of appellant Matthews for rehearing has led us to reconsider our affirmance of his convictions. In United States v. Hammonds, 138 U.S.App.D.C. 166, 425 F.2d 597 (1970), involving a similar problem of ineffective assistance of counsel, the court reversed Hammonds' convictions because of constitutional error there found. In that case as in this the conduct of the same counsel was involved, and the same kind of casual summation to the jury occurred. Moreover, the evidence of guilt in *Hammonds* was no less strong than the evidence of guilt in Matthews' case.

The opinion of the court in *Hammonds* does refer to instances of claimed ineffectiveness, aside from the summation, which are not present to the same degree in Matthews' case. Such differences, however, do not enable us sufficiently to distinguish the two cases, in both of which constitutional error was found in the conduct of counsel. An affirmance here, therefore, in reliance upon the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and

Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), notwithstanding the constitutional error, would weaken the value and importance of *Hammonds*. This we are unwilling to do. Upon reconsideration of Matthews' case we accordingly are persuaded that because of the ineffective assistance of his counsel his convictions should be reversed.

We deny the petition for rehearing of Mitchell.

Appropriate judgments will be entered.

LEVENTHAL, Circuit Judge, concurring: If the argument of counsel for appellant Matthews had been only casual, I am not sure that I would have reached the same judgment as that reached in United States v. Hammonds, 138 U.S. App.D.C. 166, 425 F.2d 597 (1970). I think it appropriate to review how appellant's trial counsel handled the case and why there was ineffective assistance of counsel.

1. In this case the counsel's handling of the witnesses was brief but not "ineffective." The Government's principal witness was Voyles, the manager of the restaurant. Mitchell had introduced himself to Voyles in January, 1967, as a Treasury Agent, and said some Hot Shoppe employees were suspected of being narcotics distributors. He visited Voyles again and phoned him to schedule an appointment, and came to make an arrest. On February 14, he arrived with Matthews whom he introduced to Voyles as an agent. As soon as the introduction was over Matthews produced a gun and demanded that Voyles open the safe.

With respect to both the robbery and transportation of Voyles in his car following the robbery, Voyles gave very positive identification. His direct testimony made it clear that he had opportunity to see both of the men involved.

Counsel for Matthews declined cross-examination. Counsel for Mitchell engaged in cross-examination, and while

opinions may differ in my view the cross-examination only made the testimony of Voyles more effective.

The same was the consequence of the cross-examination by Mitchell's counsel of the Government's next witness, Robert Arata, who was preparing salads while the manager was with the two men and who had opportunity to look into the room because the upper half of the manager's office was glass enclosed. He saw them for several minutes. His testimony, too, was strengthened, in my opinion, by the cross-examination by counsel for Mitchell.

Perhaps this is why there was no cross-examination of the next two witnesses,— Robert Simpson, the food production manager who saw Matthews eating breakfast at the counter, and Mabel Snyder, waitress, who said that she served breakfast to these two men on both the 13th and 14th of February and had spoken to them.

The testimony of Mr. Leach, the owner of the Explorer Restaurant, as to Matthews was only that he worked at the Explorer as a cook on February 11 and 12, a time when Mitchell was also working there. There was no cross-examination, but the same testimony was in essence established by appellant Matthews himself.

The one item of cross-examination which counsel for Matthews did provide was in the questioning of the police officer Robert Greaner, who received a lookout for the Voyles' car, and minutes later spotted Matthews driving it, abandon it, and get on a bus.

Counsel elicted on cross-examination that in the course of turning around in his follow-up maneuvers, he did not in fact see who got out of the car when it was abandoned. This was not much, but at least it qualified the testimony of a crucial Government witness.

2. Counsel advised Mr. Matthews to take the stand. The Government advised the court that appellant's prior conviction (carrying a concealed weapon in Ohio) was of a sufficiently similar crime that it might be prejudicial and it waived impeachment.

Matthews explained his presence on the D. C. Transit bus in Hyattsville, Maryland as follows:

He said he had been with his cousin stationed at Fort Belvoir the previous night; that he had just come to the District from Columbus, Ohio; he had taken a bus from the Dunbar Hotel on 14th Street down to Pennsylvania Avenue; and then at Pennsylvania Avenue, where he was told he could catch the connecting bus to Ft. Belvoir, Va., he had indeed taken a bus going North to Hyattsville.

I see two major weaknesses in the testimony of Matthews. First that he made no inquiry at Pennsylvania Avenue where to get the bus to Ft. Belvoir. This requires belief in his alleged understanding that the first bus he saw on Pennsylvania Avenue after he got off the 14th Street bus would be the one for Ft. Belvoir. Second is the avowal that he did not ask the conductor anything about Ft. Belvoir until he had been on the bus for quite some considerable period.

3. The prosecutor's opening argument fairly set forth the requirements of presumption of innocence and of the need for the Government to prove guilt beyond a reasonable doubt. He laid heavy stress on the credibility of the Government's witnesses, and lack of motivation to lie, and clear and convincing identification; and then relied heavily on the fact that Matthews had not seen fit in any way to arrange for his cousin to testify and verify that he was expecting Matthews at Ft. Belvoir as Matthews testified. It had been brought out that Matthews knew the present address of his cousin, now living in Columbus.

4. About all that was required of defense counsel at this point was a restatement of the presumption of innocence, a brief summary of Matthews' defense, and a submission to the jury that Matthews' testimony was certainly sufficient to raise a reasonable doubt. But he did not

do this. In fact his argument rather indicated that he did not believe the testimony of Matthews. As stated in the Petition for Rehearing, there were elements of this argument that were "markedly prejudicial" to Matthews. He said:

> "Counsel for the defense—I happen to be counsel for the defendant Ronnie Matthews—also has his job. I hesitate to say, but I believe I have done it to the best of my ability *with what I have had to work with,* so I will make these few remarks and I will sit down."

> \* \* \*

> "The missing cousin is an interesting aside in this case. I don't know anything about the cousin. All I know is what I heard from the witness stand. And if he isn't here, *perhaps you might very well draw whatever inferences you might see fit to draw from the fact that he isn't here to testify on behalf of his cousin.* I really don't know." (Tr. 222–23.)

5. While the case was very strong against Matthews, strong enough so that a number of errors might be regarded as harmless, this particular error was prejudicial because it really served to undermine the only defense that Matthews had. It was more damaging than a casual summation; it was a summation by defense counsel that was positively prejudicial to defendant.

I have taken the trouble of outlining the prejudice I think occurred, because I am by no means of the view, as suggested in the Petition for Rehearing, that in these cases no possibility of prejudice need be shown. Where defendant has not been provided with counsel, that fact in and of itself establishes the need for reversal without regard to any other possibility of prejudice. Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942), but when the claim is posed in terms of ineffective assistance of counsel, then I think the ineffectiveness has to be measured in terms of whether the attorney has in effect blotted out the substance of a defense, Bruce v. United States, 126 U.S.App.D.C. 336, 340, 379 F. 2d 113, 117 (1967).