William J. ANGARANO, Appellant,

v.

UNITED STATES, Appellee.

Richard H. LONG, Appellant,

v.

UNITED STATES, Appellee.

Lucius Frank McKOY, Appellant,

v.

UNITED STATES, Appellee.

Gertrude BARNES, Appellant,

v.

UNITED STATES, Appellee.

Joseph RUSSELL, Appellant,

v.

UNITED STATES, Appellee.

Nos. 7006, 7140, 7168, 7312, 7435.

District of Columbia Court of Appeals.

Oct. 30, 1973.

Silas J. Wasserstrom, Washington, D. C., appointed by this court, with whom Peter Kolker and Norman Lefstein, Washington, D. C., were on the motion to withdraw in No. 7006.

Stuart Stiller, Washington, D. C., appointed by this court, with whom Gail P. Higgins and Norman Lefstein, Washington, D. C., were on the motion to withdraw in No. 7140.

Robert M. Weinberg, Washington, D. C., appointed by this court, with whom W. Gary Kohlman and Norman Lefstein, Washington, D. C., were on the motion to withdraw in No. 7168.

Arline Mendelson, appointed by this court, with whom Norman Lefstein, Washington, D. C., was on the motion to withdraw in No. 7312.

Jeffrey Freund, appointed by this court, was on the motion to withdraw in No. 7435.

Before REILLY, Chief Judge, and KELLY and NEBEKER, Associate Judges, in chambers.

NEBEKER, Associate Judge:

In these cases attorneys of the Public Defender Service (PDS) represented the defendants. This is their only common factor. After conviction, each appealed. This court, consistent with its usual practice of appointing trial counsel as appellate counsel, see Gaskins v. United States, D. C.App., 265 A.2d 589 (1970), appointed the PDS trial attorney to represent the appellant in each case. The PDS has, with our approval, assigned others of its professional staff to enter appearances as co-counsel to assist in representing the appellants, except in *Barnes,* No. 7312, where the only attorney of record is trial counsel. (We note she is the only attorney of record on the motion to withdraw.) Thereafter, motions were filed by PDS counsel in four of the cases seeking to withdraw as counsel on appeal. The motions made vague references to ethical obligations and asserted a conflict of interest. In one case (McKoy) the motion was somewhat more specific. It also asserted that in the judgment of counsel "there is a non-frivolous issue which should be raised in this appeal concerning ineffective assistance of counsel on the part of a Public Defender Service attorney . . . ." Thereafter, this court, Judge Kelly disagreeing, entered an Order denying the motions to withdraw without prejudice to renewal on a more particularized description of the ineffectiveness issue.[1] That Order is reproduced below:

DISTRICT OF COLUMBIA
COURT OF APPEALS

FILED AUGUST 9, 1973
January Term, 1973

Nos. 53690–72
23131–72–A
65275–72
50045–72

Nos. 7006, 7140, 7168, 7312

William J. Angarano (No. 7006), Richard H. Long (No. 7140), Lucius Frank

---

1. Earlier in Smith v. United States, D.C.C.A. No. 6980, Order dated July 26, 1973, a different division, Judge Fickling dissenting, granted a similar motion in a case which was briefed and scheduled for argument.

McKoy (No. 7168), Gertrude Barnes (No. 7312), Appellants,

v.

United States, Appellee.

BEFORE: Reilly, Chief Judge, Kelly and Nebeker, Associate Judges.

### ORDER

On consideration of counsel's motion in the above unconsolidated cases for leave to withdraw, and it appearing that said motion is predicated on a desire of Court-appointed counsel from the Public Defender Service not to argue the constitutional ineffectiveness of Public Defender trial counsel and that the Public Defender's Office has refused to state with any degree of particularity the nature or substance of the asserted ineffective assistance of counsel point, and has requested the Court to rule solely on the representation of Court-appointed counsel that the unidentified issue is non-frivolous, it is

ORDERED this 9th day of August, 1973, that the aforesaid motion is denied without prejudice to renewal thereof upon a more particularized description of the ineffective assistance of counsel issue. Such showing need not take the form of advocating ineffectiveness. See Floyd v. State (208 Kan. 874) 495 P.2d 92 (Kans.Sup.Ct.1972), issues identified as (1) counsel misled defendant into believing two co-defendants would be adverse witnesses; (2) counsel frightened the defendant with horrors of prison life to induce a guilty plea for a possible lesser sentence; (3) counsel "badgered, cajoled, [and] persistently persuaded him to enter a plea of guilty"; People v. Gray (4 Ill.App.3d 934), 282 N.E.2d 189 (Ill.App.Ct. 5th Dist. 1972), issue described as Public Defender induced a plea of guilty by promising that the defendant would receive probation; People v. Smith, 37 Ill.2d 622, 230 N.E.2d 169 (1967), Court inquired as to nature of issue respecting ineffectiveness of counsel

and was given the specific reasons though the opinion of the Court does not set them forth. Cf. Brown v. Warden, Md.Ct.App.1962 (228 Md. 654), 179 A.2d 419, appeal from postconviction proceedings where the accused "testified quite fully" with regard to his contention that counsel *did not competently represent him.* Court holding ". . . regardless of the merit or lack of merit of these complaints, other counsel should have been appointed to represent Brown when the proceedings took this turn"; Christopher Smith v. U. S., No. 6980, DCCA, *Per Curiam* order dated July 26, 1973, case fully briefed and issue identified in argument as plain error affecting substantial rights which issue might potentially raise Sixth Amendment question.

### *PER CURIAM.*

Associate Judge Kelly would grant the aforesaid motions.

The PDS has now filed a similar motion in yet another case (Russell). It is the sixth such motion filed in less than two months despite the fact that we have been told these instances are isolated and do not reflect a general policy of the PDS. We are also informed that the Board of Trustees of the PDS had considered these motions and authorized them to be filed, but had not authorized PDS counsel to disclose the particulars of the ineffectiveness issue. We were asked to accept at face value the representation of counsel that the ineffectiveness of counsel issue is nonfrivolous. This is so even though PDS planned to inform newly appointed counsel from the private bar of the issue and of all relevant facts.

Faced with our Order, *supra,* the PDS has apparently decided to more particularly describe the nature of the issues. There is now filed in these five cases a Memorandum in Support of Motions to Withdraw As Appellate Counsel, but counsel on the memorandum (who considers himself "appellate counsel") has entered an appear-

ance in only three of the captioned cases: *Angarano,* No. 7006; *Long,* No. 7140; and *McKoy,* No. 7168. We treat the memorandum as a renewal of the motions previously denied and make the following dispositions.

### BARNES, No. 7312

█ In this case the memorandum states:

[A]ppellate counsel learned through information outside the record that trial counsel failed for nontactical reasons to challenge a statute already held unconstitutional in this jurisdiction. . . .[2]

We are not told what the statute is but since the case involves a charge of soliciting for prostitution, D.C.Code 1967, § 22–2701, we will assume the reference is to that section of the Code. We also assume the holding referred to is in United States v. Moses, Super.Ct.Cr. No. 17778–72 (Opinion filed Nov. 3, 1972). That case has been argued on appeal and is awaiting decision in D.C.C.A. No. 7042.

Clearly, counsel in this appeal can argue the unconstitutionality of § 22–2701 without reference to the Sixth Amendment. The issue to be decided in *Moses* is a purely legal one. The statement that the statute has "already [been] held unconstitutional" is misleading since it implies the decision by the Superior Court judge is binding precedent. Obviously, it is not. It would be unthinkable to hold or even imply that failure of an attorney to assert the unconstitutionality of this presumably valid statute,[3] as old as it is, raises it to the level of constitutional ineffectiveness. It must be recognized that a charge of professional incompetence of this magnitude is not a

readily available tool which may be used by an appellant to attack his conviction. Nor is it to be a ready alternative to obtain a new trial by free use of 20–20 hindsight when the usual avenues have been unsuccessfully exhausted. The threshold is certainly higher in such cases than nonfrivolity. *See* Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967). We think the better test is the one applied when determining the necessity for a hearing on a collateral attack asserting ineffectiveness of counsel. That is—does the contention, if true, entitle the pleader to relief; or, is a prima facie case of constitutional ineffectiveness apparent? *See* Terrell v. United States, D.C.App., 294 A.2d 860 (1972), and Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958), as setting the "range of competence demanded of attorneys in criminal cases."[4] for constitutional ineffectiveness. We hold that even inadvertent failure to raise this constitutional attack as to § 22–2701 does not amount to a violation of appellant's Sixth Amendment right to effective representation.

We note that in United States v. DeCoster, 487 F.2d 1197 (D.C.Cir., 1973), the circuit court has concluded that a different standard than announced in Bruce v. United States, *supra,* has begun to be applied in direct appeal attacks on effectiveness of trial counsel.[5] The circuit court then adopted a new standard using as a "guidepost" the ABA Project On Standards for Criminal Justice, Standards Relating to the Defense Function (Approved Draft 1971). The standard now adopted by the circuit court for direct appeal evaluation of repre-

---

2. As noted above, trial counsel has filed the motion to withdraw and thus is asserting her own ineffectiveness. Presumably it is intendthat new PDS counsel will enter an appearance in this case.

3. Murray Co. v. National Mortgage Corp., D.C.App., 299 A.2d 147 (1973).

4. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

*See also* Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

5. The collateral attack standard under Bruce v. United States, *supra,* is "that there has been gross incompetence of counsel and that this has in effect blotted out the essence of a substantial defense". *Id.* 126 U.S.App.D.C. at 339–340, 379 F.2d at 116–117.

sentation is in short form: "[A] defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." United States v. DeCoster, supra, 487 F.2d at 1202. (Italics in original; footnote omitted.) The opinion then spells out in general and in specifics what is to be expected of counsel in order to ensure that counsel will act "in the role of an active advocate in behalf of his client" and to "preserve the adversary process". Id., 487 F.2d at 1202; footnotes omitted. While the DeCoster opinion appears to reflect acceptance of some earlier dissenting views of its author, it is significant that even this new standard does not demand a perfect performance of counsel gauged by hindsight. The underlying precedent for this new standard of a "reasonably competent . . . diligent conscientious advocate" (id., 487 F.2d at 1202; italics in original; additional emphasis supplied; footnote omitted), makes very clear that while the standard is different the threshold for constitutional ineffectiveness remains at a level sufficient only to cure exceptional cases. In United States v. Hammonds, 138 U.S.App.D.C. 166, 425 F.2d 597 (1970), the court aggregated numerous omissions and errors, each not enough to show ineffectiveness, and a "futile" closing argument. In so doing, however, the court carefully retained the axioms that a successful defense is not the measure of effectiveness, and that "[m]ere errors of judgment as disclosed by subsequent events [or hindsight, we might add] are not sufficient to establish ineffective assistance of counsel." Id., at 170, 425 F.2d at 601. In Matthews v. United States, 145 U.S.App.D.C. 323, 449 F.2d 985 (1971), a similar insipid summation by the same trial attorney evaluated in Hammonds resulted in reversal on Sixth Amendment

grounds. In neither case was a standard for constitutional ineffectiveness articulated, but, Judge Leventhal, concurring in Matthews, supra at 332, 449 F.2d at 994, applied the Bruce test of whether the attorney "blotted out the substance of a defense". It would appear that even under this newly articulated standard in United States v. DeCoster, supra, which places emphasis on requiring counsel to perform reasonably and diligently as an advocate, the evaluation of counsel's performance ultimately depends on whether a defense of substance was excluded by gross ineptitude.[6] It must be remembered that an advocate must have a rational point to make before he can function in that capacity. Of course he has a duty to reasonably investigate and analyze his case in search for points of defense.

The motion to withdraw in this case is denied.[7]

### LONG, No. 7140

■ It is here asserted that for "nontactical" reasons "a potentially available defense" was not asserted. From what we have said in Barnes' case, discussed supra, it is obvious that a more complete showing of the nature of the defense must be made. What counsel deems to be a potential defense must be shown to be a defense as a matter of law and available on facts known or obvious to counsel to such an extent that failure to present that defense raises it to the standard set for constitutional ineffectiveness.

The motion to withdraw is denied, again without prejudice.

### ANGARANO, No. 7006

■ The assertion in the motion to withdraw in this case is "that trial counsel

---

6. While it does not seem that this new standard differs greatly from that of the past it does appear that new procedures and burden of proof are established for direct appeal attacks on counsel in the United States courts here. We do not pass on these questions here, but we do note that by remanding the record for a hearing the circuit court

has, in effect, treated the attack on trial counsel as a collateral attack on the conviction.

7. We recognize that we are dealing facially with the merits of this claim in making this decision, but that is not unusual. The cases cited in our earlier Order, supra, and on which PDS relies, clearly support this holding.

failed for nontactical reasons to request a severance after the trial court granted a motion for judgment of acquittal." A severance of counts is evidently referred to.

Angarano was brought to trial on two counts of destroying property in violation of D.C.Code 1967, § 22–3102. Angarano, a student at Georgetown University, was suspected of being the individual responsible for a number of small fires which broke out on the Georgetown campus in the early fall term of 1972. The two burning incidents from which these charges arose occurred in a dormitory on September 21 and September 22, 1972. In both cases, posters hanging in the hallway were ignited causing damage to the posters and walls. The prosecution presented eyewitnesses who saw Angarano in the immediate vicinity of the fires on both days. He claimed that he was in class at the time of the September 21 incident and that he was at a party at the time of the September 22 incident.

At the close of the government's case, defense counsel moved for a judgment of acquittal on both counts. The trial judge granted the motion as to the first count (September 21) but denied it as to the second count and jury trial was resumed. At the conclusion of all the evidence, the motion for judgment of acquittal was renewed as to the September 22 count. The motion was denied and the case submitted to the jury, which returned a verdict of guilty.

The court also denied a motion for judgment n. o. v. or, alternatively, a motion for a new trial. Therein counsel for defendant raised issues which shed light on the present problem. It was alleged that developments in the case may have served to divert the jury's attention from the primary issue, namely, defendant's whereabouts on September 22, 1972. Some of these developments were as follows: A similar fire broke out on September 23, 1972, the day after the incident charged. Attempting to show the defendant's noninvolvement with all the fires, the defense

counsel at various points in the trial referred to proof of the defendant's whereabouts on September 23. Evidence was introduced tending to show that Angarano was in York, Pennsylvania, at the time of the September 23 fire. It was contended thusly:

> Had the defendant been tried solely with respect to the September 22, 1972 count, such evidence would have been unnecessary to the defense and would not have been offered. It was produced, therefore, primarily because of the anomalous circumstances of this case: the joinder of two similar counts for trial and the Government's reference in opening statement to prior (*sic*), similar episodes of burning on campus.

■ Under these circumstances we find nothing about failure to move for a severance of counts which raises a question of professional incompetence warranting inquiry under the Sixth Amendment. Again, we state that such an attack upon trial counsel is not a device to be used on appeal except in the most severe cases of glaring ineptitude. It is our view that this area of challenge to a conviction must be thus limited so as not to pose an unwarranted professional hazard to the bar who must defend in these cases, and to avoid a state of the law wherein "ineffective" assistance of counsel can become an effective way of obtaining a new trial. In this case we conclude that counsel on the appeal can effectively treat the issue in terms of whether a new trial should have been granted under Super.Ct.Cr.R. 33, and the applicable case authority thereunder. We find nothing in the assertions of counsel which either supports an ethical claim of conflict of interest because both counsel are employed by the PDS, or a claim of foreseeable prejudice to the appellant if present counsel remains in the appeal.

### McKOY, No. 7168

■ Here, we are simply told that "trial counsel's failure to raise a substantial

Fourth Amendment claim below precludes any issue from being raised on appeal since no information appears on record to support a plain error argument."[8] Without a more particularized showing of what the Fourth Amendment issue is, we cannot determine whether a prima facie case for constitutional ineffectiveness exists. This court is left to speculate as to what counsel has in mind.

Appellant McKoy appeals the judgment of contempt of court for failure to cooperate in submitting handwriting exemplars pursuant to court order. He was sentenced to serve 90 days to run consecutively to any sentence being served and he could purge himself of 60 days of this sentence by submitting handwriting exemplars as required. Expert testimony at the hearing showed that in the handwriting exemplars he completed he was intentionally disguising his handwriting. McKoy was told to fill out two cards, which he did in a very "slow and laborious manner", taking approximately 25 minutes to complete each card. He refused to write in a faster and more natural style and after completing the second card, refused to write more. An expert who observed McKoy and examined the exemplars testified that McKoy was obviously attempting to disguise his handwriting.

Since Fifth and Sixth Amendment claims are probably precluded, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Lewis v. United States, 127 U.S.App.D.C. 269, 382 F.2d 817 (1967), it is apparent that appellate counsel has in mind another, and probably imaginative, approach. We do not express any view on the issue, but the motion to withdraw as counsel for the reason asserted is denied without prejudice.

## RUSSELL, No. 7435

■ The Public Defender Service tells us that "appellate counsel learned through information outside the record that for nontactical reasons trial counsel did not secure at trial the presence of an important witness on the issue of misidentification." Reliance is placed on an opinion of the Circuit Court in United States v. Thompson, 154 U.S.App.D.C. 347, 475 F.2d 931 (1973), reflecting, by way of dicta, that failure to call a witness or investigate possible facts may amount to ineffectiveness of counsel.[9] Whether this is a statement of law or not we do not decide here. From what little we are told, we cannot know whether the asserted misidentification issue revolves around identification of the accused during the offense (e. g., inability of another witness or witnesses to see the accused at the time of the offense or alibi) or procedures followed at an identification proceeding at the instance of the police. Without more, we cannot say this asserted Sixth Amendment claim has sufficient merit to warrant release of assigned public defender counsel. This motion is again denied without prejudice.

So ordered.

KELLY, J., would grant the aforesaid motions.

---

8. We assume that by a "substantial" claim counsel means a nonfrivolous claim.

9. We suggest such conclusion is not a holding because the judgment of conviction was affirmed by a separate judgment—the opinion holding only that an affidavit attached to appellant's brief was not properly before the court. The opinion does not state what disposition the court made of the case.