**UNITED STATES of America**

v.

**Charles HAMMONDS, Appellant.**

No. 22744.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 16, 1970.

Decided March 30, 1970.

Mr. J. Laurent Scharff, Washington, D. C. (appointed by this court), for appellant.

Mr. Warren R. King, Asst. U. S. Atty., with whom Mr. Thomas A. Flannery, U. S. Atty., and Mr. John A. Terry and Mr. Richard A. Hibey, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, TAMM, Circuit Judge, and JAMESON*, Senior District Judge.

* Sitting by designation pursuant to the provisions of Title 28 U. S. Code Section 294(d).

JAMESON, District Judge.

Following conviction in a jury trial, appellant was sentenced to imprisonment for a term of five to fifteen years for first degree burglary, one to three years for assault with a dangerous weapon and two to six years for assault on a member of the police force with a dangerous weapon,[1] all sentences to run concurrently. This appeal followed.

The Government's case may be summarized as follows: Between 9:00 and 9:45 P.M., on April 26, 1968, appellant was discovered in a second floor apartment occupied by Mrs. Mamie Bellinger and her six children. Her eight year old son, who was in the kitchen, called Mrs. Bellinger's attention to a "foot up on the bed" in an adjoining double bedroom. Mrs. Bellinger looked into the bedroom and "saw a man under the bed." After calling to him and receiving no response, she took her children downstairs to the apartment of her brother-in-law, Morgan Elmore, who was the owner of the house.

Elmore immediately rushed upstairs and as he entered the bedroom observed appellant "getting out from under the bed." Elmore asked appellant his name and why he was there. Appellant did not respond but moved toward the bedroom door, where he started "running at a fast speed, and then on down the stairs", and out of the front door, with Elmore in pursuit.

Elmore continued the chase after appellant left the house. When Elmore attempted to grab him, appellant struck at Elmore twice with a butcher knife, later identified as belonging to Mrs. Bellinger. Elmore was able to leap back and avoid injury. He continued to pursue appellant and observed appellant leap a fence and go under a porch.

Shortly thereafter a police squad car arrived. Two uniformed officers were in the car. They were informed by Elmore of what had transpired. The officers took a dog from their car, and the dog discovered appellant under the porch. While one of the officers, with his service revolver drawn, was searching Hammonds, appellant swung around, knocking the revolver to the ground and inflicting cuts with a knife on the officer's wrist. Following a scuffle, appellant was handcuffed and placed under arrest.

Appellant, a 31 year old laborer, was the sole witness for the defense. He testifed that the evening before the arrest he had worked at the Sheraton-Hilton Hotel, [sic], taking the place of a friend. He finished work at 2:00 A.M. and slept from 4:00 to 8:00 A.M. About 8:30 A.M. he received $13.00 from the friend for the night's work. He then began drinking beer and wine at a bar and later purchased whiskey from a liquor store. He testified that during the day he drank the equal of about a fifth of whiskey, and had nothing to eat, and that he had "fifty-some" cents when he was arrested. In response to a question concerning his whereabouts during April 26, he testified: "Mostly mingled around Seventh Street, all the time, and the last I remember I was on Seventh Street, the last I recall, the last incident before remembering being chased out of this house, being pursued by a man."[2] Appellant's testimony regarding the events at the time of his arrest in many respects differed significantly from that of the officers and Elmore.[3]

---

1. A charge of petit larceny was dismissed by the court, and defendant was acquitted of a charge of assault on a member of the police force.

2. The Elmore house is about one mile from appellant's home and is not near the area where appellant allegedly spent the day before his arrest. Hammonds insisted that he could not explain his presence in the house or room where he was discovered by Mrs. Bellinger.

3. Appellant was not interrogated on direct examination regarding his arrest and alleged assault on the officer. All of this testimony was elicited on cross-examination.

Appellant contends that (1) he was convicted of burglary upon insufficient evidence in that the jury could only speculate on (a) whether he entered the dwelling with specific intent to steal, and (b) on whether any person was in the house at the time he entered, and (2) he was denied effective assistance of counsel, particularly in counsel's closing argument.

The first count of the indictment charges that, "On or about April 26, 1968, within the District of Columbia, Charles Hammonds entered the dwelling of Morgan Elmore, while the said Morgan Elmore was present in the said dwelling, with intent to steal property of another."

First degree burglary is defined by Title 22 D.C.Code Section 1801 as follows:

"(a) Whoever shall, either in the nighttime or in the daytime, break and enter, or enter without breaking, any dwelling, or room used as a sleeping apartment in any building, with intent to break and carry away any part thereof, or any fixture or other thing attached to or connected thereto or to commit any criminal offense, shall, *if any person is in any part of such dwelling or sleeping apartment at the time of such breaking and entering, or entering without breaking, be guilty of burglary in the first degree.* * * *" (Emphasis supplied).

Subsection (b) defines second degree burglary:

"(b) Except as provided in subsection (a) of this section, whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, * * * or *other building or any apartment or room, whether at the time occupied or not,* * * * with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be guilty of burglary in the second degree." (Emphasis supplied).

It is clear that between 9:00 and 9:45 P.M. on April 26, 1968, appellant was discovered in the Elmore dwelling under a bed in the Bellinger's apartment. Obviously he had no legitimate purpose in being there. When he was apprehended shortly after running from the Elmore premises he had in his possession a butcher knife which belonged to Mrs. Bellinger[4] and which had been in her kitchen the day appellant entered her apartment.

It does not appear from the testimony when appellant obtained the knife. While he denied having the knife, both Elmore and the police officers testifed that he had it in his possession when he was apprehended. We conclude that the jury could properly find that appellant entered the premises with the intent to steal. Viewing the evidence in the light most favorable to the Government, we can not say as a matter of law that the evidence was insufficient to support a conviction for burglary in the second degree.

It is clear from the statute that a person is guilty of burglary in the first degree only "if any person is in any part of such dwelling or sleeping apartment at the time of such breaking and entering, or entering without breaking."[5] There is no evidence to show when appellant entered the Elmore premises. Nor is there evidence to show that either El-

---

4. Appellant had been charged in count 2 of the indictment with stealing property of Morgan Elmore, consisting of a butcher knife. The evidence disclosed, however, that the knife belonged to Mrs. Bellinger, and on this basis the second count was dismissed.

5. The statute is a part of Public Law 90–226, an Act relating to crime and crim-inal procedures in the District of Columbia, enacted December 27, 1967. Prior thereto the statute relating to housebreaking did not include the actual presence of a person as a necessary element of the offense. The new Act defines the crime of burglary in two degrees, burglary in the first degree requiring occupancy at the time of entry. See H.Rep. No. 387, 90th Cong., 1st Sess.

more or the Bellingers were present when appellant entered the premises. All were present when he was discovered. There is no evidence concerning the times either Elmore or the Bellingers may have left or entered the premises prior to the discovery.

In answer to the question: "Now, directing your attention, Mrs. Bellinger, to the evening of April 26, 1968, approximately 9:00 or 9:45 P.M., were you home on that evening?", Mrs. Bellinger answered, "Yes, I was." The Government argues that it is fair to infer from this answer that Mrs. Bellinger was home "for sometime earlier in the evening as well" and that it is unlikely appellant "could have been present too long a period without being discovered by Mrs. Bellinger." This contention enters the realm of surmise and conjecture. Perhaps it could be argued more plausibly that since no one observed appellant entering the premises they were probably absent when he entered and discovered him upon their return. If the Government had evidence that either Elmore [6] or the Bellingers were in the dwelling for a substantial period of time prior to discovering appellant's presence, that evidence should have been presented.

■ The Government has failed to sustain its burden of proving that either Elmore or the Bellingers were present in the house at the time of entry. The evidence is insufficient to sustain a conviction for first-degree burglary.[7]

From a review of the entire record we conclude that there is merit in appellant's second contention that he was denied effective assistance of counsel, and that the case accordingly must be remanded for a new trial on all counts, i. e., second-degree burglary, assault with a dangerous weapon, and assault on a member of the police force with a dangerous weapon. Prior decisions of this court establish guidelines for resolving a claim of ineffective assistance of counsel. These rules will be summarized briefly as a background for determining the factual basis of appellant's claim.

■ At the outset we recognize that cases involving ineffective assistance of counsel "raise questions of extreme difficulty in the administration of justice." Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14, 15 (1945).[8] "The burden on the Appellant to establish his claim of ineffective assistance of counsel is heavy. * * * The question * * * is whether his representation was so ineffective that Appellant was denied a fair trial." Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281, 284–285 (1967). However, it requires a less "powerful showing of inadequacy" to sustain appellant's burden on direct appeal than is required on collateral attack. Bruce v. United States, 126 U.S. App.D.C. 336, 340, 379 F.2d 113, 117 (1967).

The Sixth Amendment of the Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of

6. The indictment alleges that Elmore was present. There was no evidence of his whereabouts prior to the time that he was called by Mrs. Bellinger after appellant had been discovered under the bed in the Bellinger apartment.

7. The Government argues that if it is held that there was a failure to show that the premises were occupied at the time of entry, it is unnecessary to remand for a new trial since the proof was sufficient to show guilt of the lesser included offense of second-degree burglary and that the case should simply be remanded for sentencing for second-degree burglary. It is

unnecessary to consider this contention since we have concluded that the case must be remanded for retrial on all counts by reason of ineffective assistance of counsel.

8. Most claims of ineffective assistance of counsel arise through habeas corpus proceedings, and "it is well known that the drafting of petitions for habeas corpus has become a game in many penal institutions and the opportunity to try an unsuccessful former lawyer has undoubted attraction to a disappointed prisoner." Jones v. Huff, supra, 152 F.2d at 15, 16.

Counsel for his defence." We are thus concerned with a constitutional guarantee, not merely a procedural formality. While the word "effective" does not appear in the Constitution itself, it was held in Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932) that the failure of the trial court to make an "effective" appointment of counsel was a denial of due process, and that the duty to assign counsel is not discharged by an assignment "under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." [9]

As this court said in Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, 793 (1958) cert. den. 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958):

> "We think the term 'effective assistance'—the courts' construction of the constitutional requirement for the assistance of counsel—does not relate to the quality of the service rendered by a trial lawyer or to the decisions he makes in the normal course of a criminal case; except that, if his conduct is so incompetent as to deprive his client of a trial in any real sense —render the trial a mockery and a farce is one descriptive expression,— the accused must have another trial, or rather, more accurately, is still entitled to a trial."

The words "mockery and farce" are "not to be taken literally, but rather as a vivid description of the principle that the accused has a heavy burden in showing requisite unfairness." Bruce v. United States, supra, 379 F.2d at 116.

In Tate v. United States, 123 U.S. App.D.C. 261, 359 F.2d 245, 253 (1966), it was recognized that "[i]ndigent appellants in the D.C. Court of Appeals are entitled to representation by counsel acting * * * not as a passive friend of the court, but as a diligent, conscientious advocate at an adversary proceeding." A defendant in the trial court is entitled to the same representation. An appearance which is "pro forma" rather than "zealous and active" does not accord the right of counsel in any substantial sense. Powell v. Alabama, supra, 287 U.S. at 58, 53 S.Ct. 55.[10]

On the other hand, it is clear that the effectiveness of counsel is not measured by his success. "Mere failure to achieve acquittal is no part of a court's consideration of the work of a trial lawyer. His obligation is to achieve a fair trial, not to see that his client is acquitted regardless of the merits." Mitchell v. United States, supra, 259 F.2d at 792. Mere errors of judgment as disclosed by subsequent events are not sufficient to establish ineffective assistance of counsel. Nor is it the function of the court "to evaluate the relative efficacy of trial tactics." Mitchell v. United States, supra, 259 F. 2d at 793.

In Clark v. United States, 104 U.S. App.D.C. 27, 259 F.2d 184 (1958) the defendant was convicted of first degree murder. The defense of insanity had

---

9. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." Glasser v. United States, 1942, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680, reh. den. Kretske v. United States, 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222.

10. The concurring opinion of Judge Burger in Johnson v. United States, 124 U.S. App.D.C. 29, 360 F.2d 844, 846 (1966) discusses in some detail the duty of counsel at both the trial and appellate level. He said in part: "The lawyer engaged in defense of an accused should be—and should be recognized as—a *professional* advocate with a highly important but none the less limited function, i. e., limited and circumscribed by the rules of the system and the ethics of the profession. At the trial stage his duty is to put the prosecution to its proof, to test the case against the accused, to insist that the procedural safeguards be followed and to put forward evidence which is valid, relevant and helpful to his client. * * In short he is to 'put his client's best foot forward'." (Emphasis in original.)

been interposed. Counsel in his argument to the jury abandoned that defense and argued that it was a " 'case of manslaughter, not a case of first degree murder' ". This was held to be error and the case was remanded for a new trial. In a dissenting opinion Judge Burger took the position that on the record counsel had a "right to believe that it would be in appellant's best interest to use the tactic of admitting appellant's obvious guilt and seeking a lesser punishment." He recognized, however, that a basis for reversal may be "grounded on ineffective assistance of counsel for failing to press an essential or central element of defense." 259 F.2d at 186, 187.

■ "In assessing the claim of ineffective assistance of counsel, we look to the entire record." Harried v. United States, supra, 389 F.2d at 285.[11]

With the background of these prior decisions, we come to a consideration of appellant's contention that the closing argument was "gross error", and that the record as a whole shows that trial counsel's "overall representation of Appellant was mechanical and at best perfunctory."

The closing argument in its entirety reads:

"May it please the Court, and ladies and gentlemen of the jury, I shan't take over ten minutes of your time in addressing you in this matter.

"Counsel for the government has talked to you. He has a job to do, and I have a job to do, and I am just about at the end of mine. We are both members of the bar, in good standing, assigned to our respective duties. He is prosecuting in behalf of the government of the United States, and I am defending as best I can the interests of this defendant.

"I shan't get emotional about this matter. I shan't get loud about it. And I shan't be very long.

"This is a relatively short case. It's taken very little time to try it up to this point, and I have a feeling that this case will ultimately be decided in a relatively short period of time.

"I am not going to rehash and repeat the details of this unfortunate event. I don't see any need for it.

"This jury is supposed to be a jury of this defendant's peers, and I daresay it is.

"I am not going to characterize the testimony of any witness here or indulge in any judgment of my own as to who is credible and who is not. I will leave that to you.

"This task, as any other task in a criminal trial, is a rather tedious one.

"All I ask you ladies and gentlemen of the jury to do is what you are supposed to do. That's all. No more, no less.

"The Court will give you the law, and along with the law should come the ultimate result, and that is justice. That's all I'm asking.

"This defendant, no other defendant, can require more than that, to just ask you to render a just judgment based on the evidence and your oath as jurors.

"Again I say to you, ladies and gentlemen of the jury, that this has been such a relatively short case that it is my considered opinion and judgment, too, that I would be more or less insulting and imposing upon you if I

11. "Few trials are free from mistakes of counsel. How much these mistakes contributed to the result can never be measured. There are no tests by which it can be determined how many errors an attorney may make before his batting average becomes so low as to make his representation ineffective. The only practical standard * * * is the presence or absence of judicial character in the proceedings as a whole." Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 670 (1945), cert. den. 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945).

said any more than what I have already said.

"Thank you."[12]

In support of his contention that the overall representation was mechanical, perfunctory and ineffective, appellant specifies trial counsel's failure to (1) appear at the arraignment, (2) conduct any voir dire examination of the jury, (3) make any opening statement to the jury, (4) cross-examine two of the four Government witnesses, with only slight cross-examination of the other two witnesses (a total of five questions) and (5) request any jury instructions, including in particular an instruction on lesser-included offenses. In addition to counsel's alleged deficiencies in the trial itself, appellant refers to counsel's failure to make any pretrial motions, including a motion for pretrial release, and his declining at the court's invitation to speak to the question of bond after conviction or to speak on appellant's behalf at the sentencing.

Counsel for appellant in this court suggests that trial counsel in his closing argument should at least have mentioned the presumption of innocence and the requirement that all essential elements of the offenses be proved beyond a reasonable doubt; that he should have pointed out to the jury the evidence which could lead to a conclusion that appellant lacked the requisite intent and also the absence of evidence establishing that a person was present in the house at the time of appellant's entry.[13] Appellant's counsel suggests further that while admitting that appellant could not provide the jury with a complete explanation of his presence in the house, trial counsel could have offered one or more hypotheses of what might have happened, i.e., that appellant, in a drunken stupor, may have wandered into the house and may have been "sobering up" when discovered by the Bellinger boy with a "foot up on the bed."

Appellee suggests that through trial counsel's "spirited defense" he managed to obtain an acquittal on two counts. The record, however, gives little support to this contention.

At the close of the Government's case, counsel for the defendant made a motion for an acquittal (presumably on all counts) "to protect the record."[14] Counsel for the Government called attention to the fact that it was alleged in the indictment that the knife belonged to Mr. Elmore, whereas the evidence disclosed that it belonged to Mrs. Bellinger; that the Government would take the position that this was not a fatal variance. At the close of all the evidence, counsel for defendant moved the court for acquittal on the charge of petit larceny, and counsel for the Government indicated that he would "be happy" to dismiss that count.[15]

12. With a similar closing argument by the same counsel, it was contended in another case that appellant was deprived of effective assistance of counsel. The case was remanded on other grounds, and this question was not determined. Mathews v. United States, No. 21,798, Slip Op. (not printed) June 23, 1969.

13. In particular, appellant's counsel suggests that the trial counsel having failed to request an instruction on the lesser included offense of second degree burglary had an obligation to explain to the jury why the evidence would not support a verdict of first degree burglary because of lack of proof that any person was in the dwelling at the time appellant entered.

14. "MR. TINNEY: Well, at this time, of course, I want to make the usual motion to protect the record. I will not pursue the matter.

"THE COURT: Your motion for a judgment of acquittal will be noted and denied."

15. "MR. TINNEY: * * * I do at this time now renew my motion for judgment of acquittal as to the petit larceny.

"THE COURT: You mean on the grounds—

"MR. TINNEY: Failure of proof.

"THE COURT: As to ownership?

"MR. TINNEY: Yes, Your Honor.

"THE COURT: I think we will dismiss that count.

"MR. HIBEY: I'll be happy to, Your Honor."

The jury returned a verdict of not guilty on the charge of assault on a police officer. One of the officers testified that he was kicked by appellant. Counsel for the Government argue that it "is entirely possible that counsel's brief but pointed cross-examination" of the officer "carried the day." The cross-examination follows:

"Q Officer Hicks, after you had this defendant handcuffed, there wasn't further resistance of any kind on his part at all, was there?

"A No, sir.

"Q I see. You didn't require any hospital treatment, did you?

"A No, sir."

■ Further detailed discussion of the proceedings and contentions of the respective parties would serve no useful purpose. Viewing the record as a whole we are compelled to the conclusion that trial counsel failed to meet the minimum requirements for effective assistance of his client. We do not find that any one of the specified actions or omissions in the conduct of the trial would in itself constitute ineffective assistance of counsel. Many of them might well be justified as proper trial tactics. But the totality of the omissions and errors, and particularly the futile closing argument, clearly reflect a pro forma defense and a lack of adequate representation in the preparation and trial of the case. Appellant has sustained his burden of establishing his claim that he was deprived of his constitutional right to effective assistance of counsel.

The judgment is reversed, and the cause is remanded for a new trial on the charge of burglary in the second degree, and counts three and four.