**UNITED STATES of America**

**v.**

**Michael W. ROSEBAR, Appellant.**

**No. 71–1494.**

United States Court of Appeals,
District of Columbia Circuit.

May 9, 1972.

Rehearing Denied June 7, 1972.

Mr. Roland D. Hartshorn, Springfield, Va. (appointed by this court), was on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry, Philip L. Cohan, and Richard L. Cys, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant was charged with and convicted of second-degree burglary (D.C. Code § 22–1801(b)) and grand larceny (D.C.Code § 22–2201) and sentenced to concurrent terms of two to six years. This appeal followed. We affirm the convictions.[1]

I

The principal witness for the Government was Rowland Rucker. He testified that on October 14, 1970, appellant came to his home at 2023 Georgia Avenue, N. W., and requested permission to spend the night, as appellant had done on several prior occasions. Rucker granted appellant's request and admitted him into his home. At approximately 10 P.M.,[2] appellant asked Rucker for a flashlight. This was provided, and Rucker opened the door so that appellant could go out. After he returned to bed, Rucker heard dogs barking and decided to investigate. He went out his front door and walked to an alley or driveway approximately twelve feet from his home. As he turned into the alley, Rucker observed appellant exiting feet first from the alley window of the Detroit Auto Body Shop, which is located at 2035 Georgia Avenue, N.W.[3] From a distance of about twelve feet, Rucker saw appellant holding the flashlight,[4] and on the ground he observed a large laundry bag, which appeared to contain something heavy.[5] When Rucker called to him, appellant grabbed the bag and ran through a nearby field, where he was joined by one or two other persons. Thereafter, Rucker returned to his home, but he made no attempt to contact the police since he had no telephone.

Frank Brown testified that he reported to work at the Detroit Auto Body Shop at 7:15 A.M. on October 15, 1970, and found that the alley window had been broken. The shop was in disarray and he noticed that some equipment and several tools were missing. Brown indicated that when he had left the shop at 7:30 P.M. on October 14, it had not been in this condition. When Albert Epstein, the shop's owner, arrived at 8:30 A.M. on October 15, he discovered that approximately $300 worth of tools and equipment had been taken.

On October 15, Rucker was talking with Epstein at the auto shop, when he pointed out appellant, who was walking along Georgia Avenue, as the person whom he had observed exiting from the premises the night before. Thereafter, Officers Ellison and Craig, who were on the scene, arrested appellant.

Ronald Martin, the owner of an auto repair shop located about one and one half blocks from the burglarized shop, testified for the defense that someone other than appellant had tried to sell him some auto repair equipment on Oc-

---

1. Due to the clarity of the issues presented in this case, we see no necessity for oral argument.

2. Several different times were stated, ranging from 10 P.M. until after midnight.

3. Officer Ernest Ellison testified that after the offense Rucker had told him that he had observed the events in the alley from his window. However, the officer had not specifically asked him whether he had gone to the alley, and Rucker testified in rebuttal that he had first looked out his downstairs kitchen window when he heard the dogs barking, then gone outside to investigate, whereupon he saw appellant.

4. Although Rucker had testified before the grand jury that he could not see the flashlight in appellant's hand when he came out of the building, Rucker indicated at trial that his grand jury statement was erroneous.

5. The alley was illuminated by lights from across the street.

tober 15, shortly before appellant was arrested. This is not inconsistent with appellant's guilt since the Government's testimony indicated that appellant had been joined by one or two other persons shortly after he left the body shop.

Appellant, testifying in his own behalf, denied that he had committed the offense in question. He claimed as an alibi that he had stayed at 405 P Street, N.W.,[6] on the night of October 14, 1970, after returning from his job with Pride, Inc.[7] He further indicated that he was minding his own business when he was arrested on October 15, after leaving work.[8] He denied having had conversations with Rucker, except on occasions when Rucker allegedly had approached him with homosexual solicitations.

On cross-examination, appellant first indicated that he had not worked on October 14 or 16, but that he had worked on October 15. Thereafter, he said he had worked each day from October 12 through October 15. He asserted that $70.08 which he had received from Pride, Inc. was for annual leave and not for salary covering October 12 and 13. Appellant acknowledged that his signature appeared on a Pride, Inc. attendance report which indicated that he had worked from October 12 through 16. However, he stated that the report could not be correct, since he had not worked every day of the week of October 12. Appellant was also impeached with two previous petit larceny convictions, one from 1966 and one from 1967.

## II

■■ Appellant's first contention is that there was insufficient evidence to sustain his convictions. The Government's case relied primarily upon the eyewitness testimony of Rowland Rucker. Although there were some minor contradictions in his testimony, he testified to facts which if believed were suf-

ficient to support the conviction. The determination of credibility was clearly for the jury. *See* Johnson v. United States, 138 U.S.App.D.C. 174, 178 426 F.2d 651, 655 (1970) (*en banc*), cert. dismissed as improvidently granted, 401 U.S. 846, 91 S.Ct. 1258, 28 L.Ed.2d 523 (1971); United States v. Carter, 144 U.S.App.D.C. 193, 195, 445 F.2d 669, 671–672 (1971). *See also* Jackson v. United States, 122 U.S.App.D.C. 324, 353 F.2d 862 (1965). We are therefore unable to conclude that there was insufficient evidence to support appellant's convictions.

## III

■ Appellant also contends that the trial judge permitted the Government too much latitude in their cross examination of him. On direct examination, appellant had testified (1) that he had lived at 405 P Street, N.W., during October of 1970; (2) that he had returned to that address on October 14, 1970, after finishing work at Pride, Inc.; and (3) that he had worked at Pride, Inc. "every day," presumably including the day of his arrest. This testimony was vital to his alibi defense since his claim that he had returned to 405 P Street on October 14th was in direct contradiction of Rucker's testimony that on the evening of the 14th appellant had been at Rucker's home at 2023 Georgia Avenue and at the Detroit Auto Body Shop at 2035 Georgia Avenue. In view of his testimony on direct examination, we find that the trial judge did not abuse his discretion by permitting the Government to cross examine appellant concerning the address which he had listed on a 1970 Pride, Inc. identification card, as well as the records indicating the days he had worked during the week of the crime in question. The cross examination concerning the address was relevant because it referred to 2004–8th Street, N.W. which is around the corner from Rucker's home and appellant had testi-

6. Appellant had listed his address as 2004 Eighth Street, N.W., on a 1970 Pride, Inc. identification card which was admitted into evidence.

7. *See* note 9, *infra.*

8. *Id.*

**1258**

fied "He never lived around the corner from Rucker" (App. br. p. 7). *See* United States v. Pugh, 141 U.S.App.D.C. 68, 436 F.2d 222 (1970); Alford v. United States, 282 U.S. 687, 691–694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). The prosecution had reason to believe that appellant had only worked on October 12 and 13,[9] and it was attempting to demonstrate that appellant's testimony and signed records to the contrary were false.[10] These matters went directly to his credibility.

### IV

██ Although appellant finally asserts that he was denied effective assistance of trial counsel, we see no merit to this contention. The record indicates that appellant received a full and fair defense. Success is clearly not the measure of a counsel's effectiveness. *See* United States v. Hammonds, 138 U.S. App.D.C. 166, 170, 425 F.2d 597, 601 (1970); Mitchell v. United States, 104 U.S.App.D.C. 57, 59, 259 F.2d 787, 789, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958). Appellant has simply failed to sustain his heavy burden of demonstrating ineffective assistance of counsel.[11] *See* Scott v. United States, 138 U.S.App.D.C. 339, 340, 427 F.2d 609, 610 (1970); Harried v. United States, 128 U.S.App.D.C. 330, 333–334, 389 F.2d 281, 284–285 (1967); United States v. Hammonds, *supra*, 138 U.S.App.D.C. at 169–171, 425 F.2d at 600–602.

For the foregoing reasons, the convictions of appellant are hereby

Affirmed.[12]

9. The Government apparently believed that the $70.08 which appellant received from Pride, Inc. covered the only two days he had worked during the week of October 12, *i. e.*, the 12th and 13th.

10. Appellant complains on appeal of two questions asked by the prosecutor of appellant on cross examination relating to prior convictions. No objection was made at trial to these questions and, thus, no ruling of any kind by the trial court was either invited or made. We do not, under these circumstances, consider that the point is available to appellant on appeal.

11. We find no error in defense counsel's acquiescence in the limiting instruction as to the purpose for which prior inconsistent statements of witness Rucker were admitted. *See* United States v. McClain, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971).

12. Due to our disposition of appellant's appeal, there is no need to rule upon the Government's motion to strike portions of appellant's brief.