Larry T. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 8236 and 9011.

District of Columbia Court of Appeals.

Argued May 1, 1975.

Decided June 9, 1977.

Jerrold Scoutt, Jr., Washington, D. C., appointed by the court, for appellant.

Donald L. Abrams, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and David M. Bullock, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY and YEAGLEY, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

These are appeals from (1) a conviction resulting in a sentence imposed under the Youth Corrections Act[1] after a jury verdict of guilty of armed robbery, and (2) from an order denying a motion for a new trial. Appellant challenges the conviction on the ground that he was deprived of effective assistance of counsel in his trial and that the court subsequently erred in failing to grant a new trial on the basis of newly discovered evidence presented in accordance with a motion pursuant to Super.Ct.Cr. R. 33.

The customary practice of this court under the Criminal Justice Act is to designate trial counsel to brief and argue the appeal—a policy adopted because the lawyer who participated in the trial knows the rulings to which objection was taken and is therefore in a better position than a newcomer to evaluate possible issues to be raised on appeal and to designate the record accordingly. An exception was made in this case, however.

Upon his appointment, appellant's current counsel after ordering complete transcript apparently concluded that it would be futile to assign as error any of the trial court's rulings. Instead, he filed a motion for a new trial on the ground of newly discovered evidence—representing primarily that defense counsel had been ineffective by failing to call certain witnesses who could have impeached one aspect of complainant's testimony and others who could have provided an alibi for appellant.

A brief summary of the trial transcript reveals that appellant's conviction of armed robbery rested entirely on the testimony of a young man from Peru,[2] employed as a bartender in a neighborhood restaurant in the 3100 block of Mt. Pleasant Street, N.W. One summer night he closed the bar about 1

---

1. 18 U.S.C. § 5010(b).

2. The record discloses that he immigrated to this country five years ago and that he has some difficulty in speaking the English language.

A.M., and put the contents of the cash register—$159.00—in his pocket to take to his employer with whom he lived. Before going home, however, he strolled over to 16th Street with a young woman, a patron of the restaurant, to call on a friend who lived in an apartment house on that street. Walking back later along 16th Street, the couple took a shortcut across a parking lot which led from 16th Street and Monroe Street to Park Road. As they were climbing over a low wall at the end of the lot, they were surprised by two men, one of whom brandished a gun in complainant's face, while the other went through his pockets, seized the $159.00, and also frisked the pockets and handbag of his companion, taking a dollar bill from her. The robbers then departed.

Immediately thereafter, complainant returned to the restaurant and reported the crime to the police, placing the time of the incident at approximately 3 A.M. Complainant testified that several weeks later he was eating in a Chinese restaurant at about 2 A.M., when three men entered. He recognized one of them (appellant) as the man who held the gun during the robbery. The latter came over to his table and complainant accused him of being one of the robbers. According to complainant, appellant replied, "Oh, yeah" and in response to a further question as to the type of handgun used, said it had been a .25.

Complainant waited until the trio left the restaurant, then rushed out, found two policemen on duty, and pointed out appellant to them. The officers stopped appellant and after verifying that the robbery had been officially reported took him into custody. From the witness stand, complainant identified appellant, who was sitting at a table in court with his original counsel, as the gunman and the same man he had talked to in the Chinese restaurant. The government then called the female victim of the robbery. She corroborated complainant's account of the holdup in relevant re-

spects, except for that witness' recollection of the respective positions of the participants with relationship to the electric lamps which lighted the parking lot.[3] She also told the jury that she had been shown a set of photographs by the police shortly after appellant's arrest and had picked out two as being similar to one of the robbers.

According to a police witness, one of these was a photograph of defendant. Nevertheless, the prosecutor never asked the woman in court if the defendant was one of the robbers. Then, calling another policeman to whom complainant had first reported the crime, the government rested. After denying a motion for acquittal, court adjourned until the next day—counsel having identified two men with him as witnesses who would testify for the defense, Witherspoon and Calhoun. When the court reconvened, however, counsel announced that he was not calling any witnesses and rested his case without putting them or the defendant on the stand.

In his summation to the jury, appellant's counsel argued forcefully that his client's identification as the gunman was subject to reasonable doubt, pointing out that the female victim did not identify him in court and was not positive even about his photograph, that the complainant's description of the location of the lights in the parking lot was admittedly inaccurate, thus revealing only a limited opportunity to observe the face of his assailant. He contended that because of his language handicap, complainant misunderstood many of the questions propounded to him as a witness and consequently might have misunderstood what appellant said when the latter was accused in their restaurant encounter of being one of the robbers, and that, in any event, his account of a stranger making damaging admissions to his professed victim was inherently improbable.

Counsel also emphasized that none of the government's evidence had placed appellant

3. Complainant had previously marked on a diagram of the lot the location of the lights and the places where he and his companion were standing while held at gunpoint. After the defense had cross-examined on this point, the prosecuting attorney conceded that the witness' markings on the diagram were inaccurate.

near the scene of the crime.[4] Before the court charged the jury, he asked for and obtained an instruction admonishing the jury that defendant had a constitutional right to abstain from testifying and therefore no adverse inference should be drawn from his silence. *See Bruno v. United States,* 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939).

From our review of the record, it appears to us that the government's case, resting as it did upon the uncorroborated testimony of one witness, fell short of overwhelming proof of guilt.[5] One major weakness in the prosecution's position was its apparent inability to show—other than through complainant's testimony—that appellant, who lived several miles away, was in the neighborhood during the early morning hours when the crime occurred. Judicial notice may be taken of the fact that the parking lot where the crime took place is situated in a quiet residential area. As there are neither nightclubs nor commercial hotels in the immediate vicinity to attract late night visitors, the adjacent streets are virtually deserted after midnight. Hence, the failure of the government to show that appellant had social or employment connections which would have provided some motive for being close to the scene might well have created some doubt in the minds of the jurors.

Thus when the government rested, defense counsel—after his motion for acquittal was denied—was faced with the choice of either putting two alibi witnesses and possibly the defendant on the stand or resting his own case without testimony and arguing to the jury that the flaws in the prosecution's evidence created a reasonable doubt. He elected the latter course. As we shall see, the alternative choice was dangerous.

Despite the Supreme Court's holding in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which prevents trial judges and prosecutors from commenting adversely on the failure of a defendant to testify and the standard precautionary warning—given in this case—a defense lawyer, who advises his client not to take the stand, may be taking a considerable risk. As Mr. Justice Stewart in his dissenting opinion in *Griffin* pointed out (*id.* at 623, 85 S.Ct. at 1237):

The petitioner was not compelled to testify, and he did not do so. But whenever in a jury trial a defendant exercises this constitutional right, the members of the jury are bound to draw inferences from his silence. No constitution can prevent the operation of the human mind. . .

This is apparently what happened when the jury deliberated this case. Whatever doubts were implanted in the minds of the jurors with respect to mistaken identification and the absence of any evidence linking the defendant to the locality were conceivably overcome by the failure of the defendant to deny in open court the accusations of the principal witness against him.

According to appellant's new counsel, this need not have happened had defense counsel bestirred himself to call witnesses who would have testified that (1) immediately before and during the time of the holdup the accused was attending a dance at a church, (2) no admissions of complicity in the robbery were made by him at the time he encountered complainant in the Chinese restaurant immediately preceding his arrest, and (3) the lights in the parking lot were facing the complainant, thereby making it impossible for him to see the face of the assailant who had the gun. Proffers of testimony of such witnesses were presented to the trial court in the form of ex parte depositions in support of a motion for a new trial based on newly discovered evidence and on the ground of ineffective assistance of counsel. Appellant now argues that denial of this motion was error, as the documents submitted to the court, as well as the

---

4. The address given by appellant was a street in the Southeast sector of the city, several miles away from the place where the prosecuting witnesses were held up and robbed.

5. The complainant's testimony did, of course, establish a prima facie case.

testimony of his trial lawyer, demonstrated that appellant had been deprived of his constitutional right to counsel, as the latter had in effect surrendered rather than offered an effective legal defense.

The government's position is that the denial of the motion was correct, as the proffered evidence was not "newly discovered." In *Quick v. United States,* D.C.App., 316 A.2d 875 (1974), we held, citing *Thompson v. United States,* 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951), that a new trial on this ground can be granted under Rule 33 [6] only if such evidence was discovered after the trial. Here, appellant is tendering primarily testimony of which he was aware at the time of his trial, but which, for reasons of his own, defense counsel did not present. Appellant's successor counsel, however, points out that as he was not appointed until several weeks after the jury returned its verdict, he had no opportunity to learn of such evidence within the seven-day period prescribed by Rule 33 for motions for a new trial on other grounds, and that in *United States v. DeCoster,* 159 U.S.App. D.C. 326, 487 F.2d 1197 (1973), the circuit court, adopting an observation in a footnote to *United States v. Brown,* 155 U.S.App. D.C. 177, 476 F.2d 933 (1973), stated that a claim of ineffective assistance of counsel should first be presented to the trial court in a motion for a new trial. We are bound, however, by the *Thompson* rule and our own prior decisions, not the *DeCoster* holding.

While we recognize that the seven-day limitation in Rule 33 does present an obstacle to filing of motions for new trials based on matters outside the record, it is our considered opinion, after examining the supporting material for the motion filed in this case, that it constituted neither newly discovered evidence (in the sense that it was not available to the defense at trial) nor grounds for holding that appellant was deprived of effective assistance of counsel. ■ In order to set aside a conviction on such grounds, we have required a showing that the challenged conduct of counsel was

so incompetent as to "blot out the essence of a substantial defense." *Cooper v. United States,* D.C.App., 248 A.2d 826, 827 (1969). This is still the recognized standard in this jurisdiction, for as we subsequently phrased it in *Angarano v. United States,* D.C.App., 312 A.2d 295, 299 (1973), *petition for rehearing denied,* D.C.App., 329 A.2d 453 (1974) (en banc):

> [T]he evaluation of counsel's performance ultimately depends on whether a defense of substance was excluded by gross ineptitude. (Footnote omitted.)

The principal defense of substance which trial counsel did not present, we are now told, was an alibi. According to appellant, his trial counsel should have called four witnesses—including the two who had been interviewed and brought to court, but never placed on the stand—who would have testified that at the time the crime was committed, appellant was at the Church of St. Stephen of the Incarnation taking tickets from persons arriving to attend a dance sponsored by a youth group, that appellant was stationed at the front door until 3 A.M. when the dance ended, and stayed for another hour to assist in cleaning up the premises. As the trial court noted in rejecting the motion for a new trial, such testimony, if offered, would probably have done appellant more harm than good. The church is only one block away from the parking lot where the robbery occurred. Thus the defense, by placing appellant close to the scene of the crime, would have supplied corroboration for the government's case. Worse still would have been the testimony placing appellant at the front door of the church. From this vantage point, appellant could have observed the victims of the crime as they were walking north on 16th Street—directly across from the church—and were perhaps the only pedestrians abroad at that hour. A jury might well have inferred that this provided appellant and some friend at the dance an opportunity to follow them as they turned into Monroe Street, just one block beyond, over-

---

6. Super.Ct.Cr.R. 33 is identical to the corresponding Federal Rule of Criminal Procedure.

take them as they entered the parking lot, and then return to the locale of the dance two or three minutes later without any of the alibi witnesses noticing their temporary absence.

■ Under these circumstances, it appears to us that any criticism of trial counsel for failing to utilize the alibi witnesses or to put his own client on the stand to explain his whereabouts is a classic example of second guessing. Conceivably, had counsel gambled on the efficacy of the alibi defense rather than dwelling on the hypothesis of misidentification, he might have been more successful with the jury, but it is axiomatic that " . . . the effectiveness of counsel is not measured by his success", *United States v. Hammonds*, 138 U.S. App.D.C. 166, 170, 425 F.2d 597, 601 (1970), an opinion from which this court quoted with approval in *Angarano, supra,* the following proposition: "Mere errors of judgment as disclosed by subsequent events [or hindsight, we might add] are not sufficient to establish ineffective assistance of counsel."[7] As the same circuit court which decided *DeCoster* has subsequently observed:

> Because of the inherent hazards to the administration of justice of ordering reversals on such grounds [*i. e.,* ineffectiveness of counsel], reversal should never be based upon the good faith tactics of defense lawyers except upon the clearest proof of actual prejudice. [*United States v. Clayborne,* 166 U.S.App.D.C. 140, 146, 509 F.2d 473, 479 (1974).]

Plainly, trial counsel's tactics in the case at bar reveal no prejudice to appellant. We have commented on counsel's strategy in basing his case on one theory which might have led to acquittal. Accordingly, it can scarcely be said that he " . . . blotted out the essence of a substantial defense . . .." *Bruce v. United States*, 126 U.S. App.D.C. 336, 340, 379 F.2d 113, 117 (1967).

The same legal principles also apply to the attack on trial counsel's tactics in not calling the two men who accompanied appellant to the Chinese restaurant the night the complainant confronted him with the accusation of having been the gunman. Supposedly they would have contradicted the testimony which depicts appellant as having admitted his participation in the holdup. As these two men were also in the youth group present at the church dance on the morning the crime occurred, and as counsel had already decided not to use testimony which would have placed appellant at that function, he would have run the risk of having this fact brought out on cross-examination, had he put either on the stand.

■ Appellant's third contention, *viz.,* that counsel was blatantly derelict in not availing himself of a witness who could have conclusively demonstrated that the principal complaining witness' version of the position of the electric lights in the parking lot was wrong, borders on the frivolous. This fact was brought out at trial, and defense counsel in his closing address to the jury seized upon it to discredit the identification. In fact, because of his objections, the court ruled out subsequent attempts of the prosecutor to bolster the government's position on this issue, pointing out that inasmuch as photographs of the parking facility were in evidence, the jury needed no further testimony on the issue of the lighting.

We perceive no error in the denial of the motion for a new trial or in the trial itself.

*Affirmed.*

---

7. *Angarano v. United States, supra* at 299.