UNITED STATES of America ex rel. Geary TURNER

v.

Mr. Julius T. CUYLER, and the Attorney General of the State of Pennsylvania.

Civ. A. No. 77–915.

United States District Court, E. D. Pennsylvania.

Dec. 19, 1977.

Barry W. Kerchner, Pottstown, Pa., for plaintiff.

Mark Sendrow, Asst. Dist. Atty., Philadelphia, Pa., for defendants.

OPINION

DITTER, District Judge.

This case arises upon a petition for habeas corpus relief under 28 U.S.C. § 2254. Relator, Geary Turner, was convicted of second degree murder [1] after a trial without

1. Mr. Turner was convicted under the law existing prior to the current Pennsylvania Crimes Code, Act of December 6, 1972, P.L. 1482, No.

a jury in state court. Turner now argues that he was denied the effective assistance of counsel because, without consulting him, his attorney[2] waived closing argument. For the reasons that follow, I find that the petition for relief must be denied.[3]

 It is well established in this circuit that what is required of counsel is "normal and not exceptional representation." *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970). Furthermore, it should be remembered that "effective" counsel does not mean "errorless" counsel, and that the burden of establishing a claim of ineffective assistance is a heavy one. *United States ex rel. Reis v. Wainwright*, 525 F.2d 1269 (5th Cir. 1976).

 Relator argues that the right to make closing argument is guaranteed by the Constitution, and that any decision to waive it must be participated in by the defendant. I have no difficulty agreeing that we are concerned here with a fundamental constitutional right. This court has expressly recognized "that the absolute right of counsel proclaimed in *Douglas v. State of California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), includes the right to have counsel be heard in summation before verdict." *United States ex rel. Wilcox v. Pennsylvania*, 273 F.Supp. 923, 924 (E.D. Pa.1967). See also *United States ex rel. Spears v. Johnson*, 327 F.Supp. 1021, 1023 (E.D.Pa.1971), rev'd., 463 F.2d 1024 (3d Cir. 1972). Any lingering doubt was effectively extinguished by the Supreme Court's recent declaration that "a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right

of the accused to make his defense." *Herring v. New York*, 422 U.S. 853, 859, 95 S.Ct. 2550, 2554, 45 L.Ed.2d 593 (1975). However, these cases do not dictate a grant of habeas corpus relief when defense counsel has waived the right of summation without consulting his client.

In *Herring*, supra, the Supreme Court dealt with a section of the New York Criminal Procedure Law which permitted a judge in a nonjury criminal trial to deny an opportunity for summation. Similarly, in *Wilcox*, supra, the trial judge interrupted the defense attorney, who was just beginning his closing argument, in order to announce the verdict of guilty.

By contrast, in the instant case, a full opportunity for summation was presented to defense counsel and voluntarily declined.[4] This critical distinction renders the above-cited cases completely inapposite to the present controversy. The Supreme Court in *Herring* clearly confined its holding to the situation where the trial court affirmatively denies counsel the right to make a closing argument, stating "[T]here can be no *restrictions* upon the function of counsel in defending a criminal prosecution . . . The right to the assistance of counsel has thus been given a meaning that ensures to the defense in a criminal trial the *opportunity* to participate fully and fairly in the adversary factfinding process." 422 U.S. at 857–58, 95 S.Ct. at 2553 (emphasis supplied). This mandate was not violated at relator's trial. No "restrictions upon the function of counsel" were imposed and "the opportunity to participate fully and fairly" was extended.[5] The question presented here is

---

334, § 1 et seq., eff. June 6, 1973, 18 Pa.C.S. § 101.

**2.** Relator's trial counsel is not the lawyer who is representing him on this appeal.

**3.** Mr. Turner's claim that he was denied the effective assistance of counsel was also rejected by the Supreme Court of Pennsylvania, which affirmed his conviction in an opinion by Justice Pomeroy. *Pennsylvania v. Turner*, 469 Pa. 319, 365 A.2d 847 (1976).

**4.** It is clear from the record that Mr. Brockington, defense counsel at relator's trial, voluntarily waived the right to make a summation:

> MR. BROCKINGTON: May it please the Court, at this time the defense rests.
> THE COURT: Do you have any rebuttal?
> MR. GORDON: No rebuttal.
> THE COURT: All right, let's have argument.
> MR. BROCKINGTON: I will waive argument, Your Honor.
> MR. GORDON: I won't, Your Honor.
> (N.T. 296).

**5.** The absence of compulsion can properly be deemed a critical factor. In *Estelle v. Williams*,

whether counsel's voluntary decision to waive that opportunity must be made in consultation with his client. The *Herring* court did not address this issue and I must look elsewhere for its resolution.

In *United States ex rel. Spears v. Johnson*, 463 F.2d 1024 (3d Cir. 1972), the Court of Appeals considered a factual situation bearing some similarity to that posed in *Wilcox*, supra. The court's analysis and conclusion are particularly relevant here. Spears was tried for aggravated robbery in a Pennsylvania state court. At the conclusion of the Commonwealth's case, defense counsel renewed an earlier motion for withdrawal of a juror. The court responded by denying the motion and simultaneously announcing its verdict of guilty. 463 F.2d at 1025. The district court granted habeas corpus relief on the ground that defense counsel had been prevented from making a closing argument. 327 F.Supp. 1021, 1022 (E.D.Pa.1971). The Court of Appeals reversed, holding that counsel could not have been denied the right of summation since he had never asked for it. Indeed, at no time did counsel suggest any desire to make a closing argument, and he did not object to the trial judge's procedure. Thus, the *Spears* panel felt that relief was not mandated since the right to summation had not been affirmatively denied. In the instant case, the absence of denial is even more clear since Turner's trial counsel was offered the opportunity for summation and declined it.[6]

Moreover, the *Spears* panel speculated that counsel may have deliberately avoided closing argument for fear that it would do more harm than good. 463 F.2d at 1026. By suggesting this as a further ground for denying habeas relief, the panel seems to imply that it would be consistent with the defendant's constitutional rights for his attorney to waive summation in the interest of trial strategy.

*Spears*, however, is not dispositive of Turner's contention because the Court of Appeals restricted its opinion with the following disclaimer: "We do not believe it necessary in the instant appeal to decide what may be the parameters [sic] of the right of an accused to make a summation to the finder of fact . . . ." 463 F.2d at 1026. Thus, the court did not reach the voluntary waiver question, and did not consider certain authority which bears significantly on the proper resolution of this issue.

My research has uncovered no case dealing directly with an attorney's voluntary waiver of the right to closing argument and none has been called to my attention. Considerable authority exists, however, on trial counsel's voluntary waiver of other constitutional rights.

In *Wilson v. Gray*, 345 F.2d 282 (9th Cir.) cert. denied, 382 U.S. 919, 86 S.Ct. 288, 15 L.Ed.2d 234 (1965), the court considered a petition for habeas corpus relief where defense counsel, without consulting his client, consented to submission of the case on the transcript of the preliminary hearing, thereby waiving the right to confront and cross-examine prosecution witnesses. While acknowledging that it was "an essential ingredient of a fair trial," the court rejected the view that waiver of the right must, in all cases, be made by the defendant personally, rather than by his counsel. 345 F.2d at 286. On the contrary, the court stated that when a decision was made by trial counsel as a matter of deliberate tactics and strategy,[7] the defendant could not

425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), the Supreme Court considered the habeas corpus petition of a defendant who had been tried before a jury while wearing identifiable prison garb. The court opinion concluded that while an accused could not be *forced* against his will to be tried in prison clothes, the constitution was not violated where no objection was made and the issue simply never came up. It should be noted that only four justices joined in this opinion. Two members of the court concurred in the result, and two dissented. One justice took no part in consideration of the case.

**6.** See note 4, supra.

**7.** The court also noted that the decision was made "in the presence of appellee and without any objection on his part." 345 F.2d at 287. Similarly, petitioner Turner was present and remained silent when his attorney waived closing argument.

be said to have suffered any denial of due process. 345 F.2d at 287–88. The court went on to suggest that the question of whether the waiver of a given right must be participated in personally by the accused is to be decided on a case-by-case basis, with the concept of fundamental fairness as the critical factor. 345 F.2d at 290. The Ninth Circuit reaffirmed this concept in the recent decision of *United States v. Goldstein*, 532 F.2d 1305 (9th Cir. 1976), where it was held that defense counsel's stipulation to the admission of evidence without his client's stated waiver did not violate due process. 532 F.2d at 1315.

At an evidentiary hearing held in this court pursuant to *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 2 L.Ed.2d 770 (1963), it was made clear that trial counsel's decision to waive closing argument was the product of deliberate choice, tempered by what he thought was necessary and appropriate under the circumstances.[8] Relator offers nothing to show that this decision deprived him of due process or fundamental fairness.

Analysis of this question would not be complete without some discussion of the Supreme Court's decision in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). There, the Court considered the habeas corpus petition of a prisoner whose felony murder conviction rested on a confession which had since been shown to be involuntary. The defendant had not taken a direct appeal to the higher state courts within the prescribed time limits, and it was argued that this barred him from federal habeas corpus relief on the ground that he had failed to exhaust his available state remedies. The Court rejected this contention and held that the requirement of exhaustion is applicable only to state remedies which are still open and available to the relator when he files his habeas petition in federal court.[9] 372 U.S. at 435, 83 S.Ct. at 847. Recognizing this holding might lead to abuse in certain circumstances, however, the Court added the qualification that " . . . the federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." 372 U.S. at 438, 83 S.Ct. 849. Nevertheless, the Court hastened to add that this qualification or exception was limited to those cases where the defendant himself had made a conscious and informed decision to forfeit his rights. Recalling the definition of waiver announced in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461,[10] the Court stated emphatically that "A choice made by counsel not participated in by the petitioner does not automatically bar [habeas corpus] relief." 372 U.S. at 439, 83 S.Ct. at 849.[11]

Undeniably, this language is cause for hesitation in the instant case. The decision to waive closing argument in Turner's murder trial was plainly "a choice made by counsel not participated in by the petitioner."

But the holding in *Fay v. Noia* does not end the inquiry. In the subsequent case of *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), the Court considered a situation where trial counsel did not object to the admission of evidence from an illegal search, thus violating the state's contemporaneous objection rule. The majority stated clearly that, despite the lack of consultation with his client, if coun-

---

**8.** See note 16 and accompanying text, infra.

**9.** The time for filing a direct appeal in the state courts had long since expired.

**10.** "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. at 464, 58 S.Ct. at 1023.

**11.** The Court proceeded to find that although petitioner Noia had in fact participated in the decision not to appeal, he was, nevertheless, not guilty of the "deliberate bypass" that the majority sought to prevent. The Court explained that appeal in 1942 (the year of Noia's conviction) meant risking retrial and electrocution. This was not the kind of free choice the Court had in mind when it ruled that, as a matter of discretion, habeas relief may be denied "to an applicant who had deliberately bypassed the orderly procedure of the state courts." 372 U.S. at 438–39, 83 S.Ct. at 849.

sel made such a decision as a deliberate part of his trial strategy, it would bind the accused, and preclude any constitutional challenge,[12] absent exceptional circumstances.[13] 379 U.S. at 451, 85 S.Ct. at 569.

In attempting to reconcile the *Fay* and *Henry* opinions, I am guided by *United States ex rel. Bruno v. Herold*, 408 F.2d 125 (2d Cir. 1969), cert. denied, 397 U.S. 957, 90 S.Ct. 947, 25 L.Ed.2d 141 (1970). Petitioner in *Bruno* sought habeas corpus relief on the ground that he had been denied his right to a public trial when the trial judge excluded most of the spectators from the courtroom. The Second Circuit ruled that the trial was sufficiently "public" to withstand a Sixth Amendment challenge, and that relator did not necessarily have a right to the presence of those people excluded from the room.[14] Even if such a right did exist, however, the Court of Appeals found that the right had been effectively waived by trial counsel's decision not to object. 408 F.2d at 129. In arriving at this conclusion, the panel reasoned that *Fay* is properly addressed to situations entirely distinct from those covered by *Henry*. *Fay* refers to decisions likely to be made after careful consideration in a conference type atmosphere, such as how to plead, whether to appeal, etc. These the *Bruno* majority called "more fundamental questions," 408 F.2d at 129, and they should only be resolved in consultation with the defendant. By contrast, said the court,

> Along the *Henry* line are the decisions, such as the present one, dealing with courtroom tactics and matters which only trial counsel would be equipped to pass on in the exercise of judgment under the circumstances presented by the then exigencies of the trial. Of necessity trial strategy must be entrusted to counsel familiar with the courtroom scene and whose decisions must be made in quick reaction as situations, usually unexpected, may arise.

408 F.2d at 129. I am in full agreement with the conclusion, implicit in *Bruno*, that a defendant is not denied a fair trial merely because his attorney failed to consult him on a decision of the *Henry* variety. *Id.*[15]

---

12. The court remanded the case for a hearing on the waiver issue in order to ascertain counsel's motives in failing to object.

13. Rather than explain what it meant by "exceptional circumstances," the Court simply cited *Whitus v. Balkcom*, 333 F.2d 496 (5th Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). *Whitus* involved the appeal of two Negroes who were convicted of slaying a white farmer in a racially troubled community. The Court of Appeals ruled that habeas relief was available because, without consulting their clients, trial counsel had not objected to the systematic exclusion of Negroes from jury service. This decision was most definitely a matter of calculated strategy. Indeed, the defense attorneys felt that the hostility certain to be generated by a challenge to the all-white jury system would be even more damaging than the total exclusion of Negroes. 333 F.2d at 498–99. The Fifth Circuit likened this to the predicament faced by the petitioner in *Fay v. Noia*, supra, who had to choose between life imprisonment on the one hand and a direct appeal with the concomitant risk of electrocution on the other. 333 F.2d at 499, n. 4. See note 11, supra.

 With such an extreme case as the example, it is clear that the facts now before me do not fit within the Supreme Court's category of "exceptional circumstances."

14. A group of 30 or 40 spectators were intimidating a witness by means of gestures and facial expressions to the point where he was rendered speechless. Thus, the trial judge ordered these people removed. The courtroom was equipped with two jury boxes, however, and several spectators were seated in the box not occupied by the jury. The judge permitted this latter group to remain, in addition to the jury, the attorneys, the official reporters, and the court attendants. Under these circumstances, the Second Circuit felt that no violation of the Sixth Amendment had occurred. 408 F.2d at 125.

15. This conclusion finds considerable support in *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) and *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). In *Estelle*, the court found that trying an accused in prison garb before a jury did not violate the constitution since no objection had been raised, thus negating the possibility of compulsion. Similarly, in *Francis*, the court denied habeas relief to a Black petitioner whose challenge was based on the exclusion of Negroes from the grand jury that indicted him. The majority held that since petitioner had not objected before trial, he could not succeed in a habeas proceeding without a showing of actual prejudice.

Returning to the facts here, it is apparent that resolution of the controversy is controlled by the *Henry* opinion, rather than by *Fay v. Noia*. At the evidentiary hearing before this court, Turner's trial counsel, Ronald Brockington, Esquire, testified that when this case was tried he had been a member of the bar for six years and had represented defendants in some 90 nonjury trials. The case had been relatively brief, lasting about a day and involving simple issues. It was his experience that closing argument was a useless and futile gesture in these circumstances. In addition, Mr. Brockington believed, albeit mistakingly, that if he waived argument, the district attorney would do the same, suggesting to me that Mr. Brockington felt the less said the better.[16] Veracity was the principal issue involved and the trial judge readily agreed with the prosecutor who characterized the defense witness' testimony as being incredible.

It is possible that Mr. Brockington made his choice solely because he believed that summation would do no good. Nevertheless, the decision to waive closing argument was still a tactical matter that counsel had to "pass on in the exercise of judgment under the circumstances presented by the then exigencies of the trial." See 408 F.2d at 129. This was a conscious and deliberate choice made by counsel in light of the circumstances as he perceived them to be, seasoned by his considerable experience with cases of a similar nature.

Under the command of *Henry v. Mississippi*, therefore, I find that Turner is bound by Mr. Brockington's decision to waive closing argument.[17] Relator is thus precluded from "asserting constitutional claims," 379 U.S. at 451, 85 S.Ct. at 569, and his petition for habeas corpus relief on the ground that he was denied the effective assistance of counsel must be refused.[18]

---

Conspicuously absent from the analysis in both these cases is any discussion of whether the accused had participated in the decision to waive his rights. One must conclude, therefore, that the majority justices were not troubled by the issue.

The question was not ignored by all the members of the court, however. Concurring in *Estelle*, Justice Powell stated:

We generally disfavor inferred waivers of constitutional rights . . . That policy, however, need not be carried to the length of allowing counsel for a defendant deliberately to forego objection to a curable trial defect, even though he is aware of the factual and legal basis for an objection, simply because he thought objection would be futile.

425 U.S. at 515, 96 S.Ct. at 1698. Particularly telling is Justice Powell's footnote to this language: "The right involved here is a trial-type right. As a consequence, an attorney's conduct may bind the client." *Id.*, n. 4, citing *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

The above quoted discussion fits the instant case. It is clear that Turner's lawyer deliberately waived the right to make a closing argument. See note 16 and accompanying text, infra. If one concludes as I do, infra, that we are concerned here with a trial-type right, Justice Powell's analysis would then hold Turner bound by his attorney's decision.

Justice Brennan dissented in both *Estelle* and *Francis*, relying principally on his conclusion that there had not been a knowing and voluntary waiver of rights by the accused himself. 425 U.S. at 515, 542, 96 S.Ct. at 1698, 1712

(Brennan, J., dissenting). I must concede that if Justice Brennan's dissents were controlling, I might well be forced to reach a different result in the instant case.

16. As discussed earlier, the Court of Appeals for this Circuit indulged a similar speculation in *United States ex rel. Spears v. Johnson*, 463 F.2d 1024 (3d Cir. 1972). The *Spears* opinion clearly implied that an attorney's deliberate waiver of closing argument for the reason that it could do more harm than good will not support a claim for habeas corpus relief. *Id.* at 1026.

17. The Court of Appeals for the Ninth Circuit reads *Henry* as binding defendants not only by tactical decisions on which they were not consulted, but also by those with which they affirmatively disagreed. *Nelson v. California*, 346 F.2d 73, 81 (9th Cir. 1965), cert. denied, 384 U.S. 1025, 86 S.Ct. 1942, 16 L.Ed.2d 1032 (1966).

18. *Matthews v. United States*, 145 U.S.App. D.C. 323, 449 F.2d 985 (1971), is not to the contrary. There, the Court of Appeals for the District of Columbia Circuit reversed defendant's conviction on the ground that he was denied the effective assistance of counsel when his attorney made a "casual" summation. At first blush, this might seem to require a grant of habeas relief to Geary Turner. Indeed, if a "casual" summation constitutes ineffective assistance, how much more ineffective is no summation at all? A closer reading of *Matthews*,

however, shows that it cannot control the instant case.

First, I agree with the concurring opinion of Judge Leventhal which points out that counsel's summation may have actually damaged defendant's case since it contained at least two thinly veiled suggestions that the defense attorney himself did not believe his client's testimony. 449 F.2d at 994 (Leventhal, J., concurring). This is far more prejudicial than anything that happened at the Turner trial.

More importantly, the *Matthews* majority offers as the principal basis for reversal its fear that affirmance "would weaken the value and importance" of *United States v. Hammonds*, 138 U.S.App.D.C. 166, 425 F.2d 597 (1970). 447 F.2d at 992. *Hammonds* involved the dubi-ous conduct of the same defense attorney as the one in *Matthews*. Besides making another "casual" summation, counsel in *Hammonds* had failed to appear at arraignment, conduct any voir dire examination of the jury, make an opening statement, cross-examine two of the government's four witnesses, or request any jury instructions. 425 F.2d at 603. Plainly, this case is so extreme that its facts have no bearing whatever on Mr. Turner's petition. Moreover, while placing particular emphasis on the "futile closing argument," the court explicitly stated that no one of the specified deficiencies could alone constitute ineffective assistance of counsel. Rather, it was the totality of the circumstances that required reversal.